# GANDY v. MARBLE.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued April 29, May 2, 1887. — Decided May 27, 1887.

On a bill in equity filed under § 4915 of the Revised Statutes, to obtain an adjudication in favor of the granting of a patent, the plaintiff must allege and prove that a delay of two years and more in prosecuting the application after the last action therein of which notice was given to him was unavoidable, or the application will be regarded as having been abandoned, within the provision of § 4894.

. This was an appeal by the plaintiff in a suit in equity brought in the Supreme Court of the District of Columbia against the Secretary of the Interior and the Commissioner of Patents, from a decree of the general term of that court dismissing the bill. The suit was brought by Maurice Gandy against H. M. Teller, as Secretary of the Interior, and E. M. Marble, as Commissioner of Patents. The bill was founded upon § 4915 of the Revised Statutes, which provides as follows: "Sec. 4915. Whenever a patent on application is refused, either by the Commissioner of Patents or by the Supreme Court of the District of Columbia upon appeal from the Commissioner, the applicant may have remedy by bill in equity; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear. And such adjudication, if it be in favor of the right of the applicant, shall authorize the Commissioner to issue such patent on the applicant filing in the Patent Office a copy of the adjudication, and otherwise complying with the requirements of law. In all cases, where there is no opposing party, a copy of the bill shall be served on the Commissioner; and all the expenses of the proceeding shall be paid by the applicant, whether the final decision is in his favor or not."

The facts of the case were these: On the 1st of December, 1877, Gandy filed in the Patent Office an application for a patent for "improvements in belts or bands for driving machinery." The application was rejected on the merits. After due proceedings, an appeal was taken to the Commissioner of Patents in person, who, on the 7th of April, 1879, affirmed the decision rejecting the application. Gandy appealed to the Supreme Court of the District of Columbia, which, on a hearing, and on the 30th of January, 1880, dismissed the petition of Gandy, and directed that a copy of its decree be transmitted to the Commissioner of Patents. The bill stated that the ground of the action of the Patent Office and of the Supreme Court of the District of Columbia in rejecting the application

was, that the invention was not patentable, having been anticipated in prior patents. The bill alleged that the application was erroneously rejected, and prayed that the court would hear and determine the right of the plaintiff to a patent for what he claimed, or for such parts thereof as he might be justly entitled to, and would decree accordingly.

The bill was filed on the 3d of May, 1883. A subpœna was issued upon it, and served upon the Secretary of the Interior and the Commissioner of Patents, on the 5th of May, 1883. On the 19th of October, 1883, the solicitor for the plaintiff served on the Secretary of the Interior and the Commissioner of Patents, in person, a notice that he would, on the next day, move the court for leave to enter their default in the case, and thereupon to proceed with the cause *ex parte* to final hearing. On the 20th of October, 1883, the court made an order setting forth, that the process of the court and a copy of the bill had been duly served upon the defendants, that they had not appeared or answered, and that, on proof of service of the above named motion, no one appearing for the defendants, it was ordered that the plaintiff have leave to enter the default of the defendants and to proceed with the cause *ex parte*, and that he have sixty days to take and put in his proofs. It also specified the officers before whom proofs might be taken. Documentary and oral proofs were put in, the former including a copy of the proceedings in the Patent Office, by which it appeared that the date of the last proceeding in the application was the making of the decree of January 30, 1880, by the Supreme Court of the District of Columbia. No one appeared for the defendants on the taking of any of the proofs. On the 14th of April, 1884, the Supreme Court, in special term, no one appearing for the defendants, made an order that the cause be heard in the first instance by the general term. On the 30th of April, 1884, Benjamin Butterworth, having succeeded Mr. Marble as Commissioner of Patents, moved the court, in general term, to dismiss the bill and set aside the order entering the default of the defendants, and for leave to make a defence in the cause, assigning as grounds for the motion that the Secretary of the Interior was not a proper

party to the suit; that Mr. Butterworth had succeeded Mr. Marble as Commissioner of Patents; and that the application for the patent had been abandoned by reason of the failure to prosecute the same within two years after the last action thereon, of which notice was duly communicated to the applicant. The court in general term made an order allowing the plaintiff to amend his bill, striking out the name of the Secretary of the Interior as a defendant and adding as a defendant the successor in office of Mr. Marble. On the same day, the court in general term made a decree, on a hearing of counsel for both parties, dismissing the bill, with costs. From that decree the plaintiff appealed to this court.

*Mr. Amos Broadnax* for appellant.

This is an original proceeding — not an appeal from the decision of the Commissioner of Patents.

It was contended by the attorney for the Commissioner of Patents in the court below, that under § 4894 of the Revised Statutes, complainant's right to a patent was barred by failure to file his bill within the time limited by that section. This question was twice argued before the court below, once on motion, and again at final hearing. That court was, however, unanimously of opinion, that § 4894 referred only to applications pending before the Patent Office, and that it did not limit the time when a bill in equity to obtain a patent might be filed.

The statute in question is as follows: "SEC. 4894. All applications for patents shall be completed and prepared for examination within two years after the filing of the application, and in default thereof, or upon failure of the applicant to prosecute the same within two years after any action therein, of which notice shall have been given to the applicant, they shall be regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the Commissioner of Patents that such delay was unavoidable."

The language of this section is explicit. It refers only to applications which are subject to "examination" by the Commissioner of Patents. The fact that the commissioner is the

only person who is authorized to investigate and determine the question of abandonment under this section seems to be conclusive on this point.

The decision of the Commissioner was affirmed by the District Supreme Court on January 30, 1880, and this bill was filed on May 3, 1883. But this proceeding, while it must be supplemental to the proceedings in the Patent Office, is nevertheless an original suit in equity to enforce an equitable right like any other suit in equity. See *In re John J. Squire,* 12 Off. Gazette, 1025; *Whipple* v. *Miner,* 15 Fed. Rep. 117.

It is not seen upon what other ground it can be considered. The statute is silent as to the time within which the bill must be filed, and in the absence of any statutory bar, it becomes a simple question as to whether the complainant intended to abandon his application, and there being no *evidence* of such intention, it becomes a question whether upon a delay of three years, under the circumstances, in filing the bill, the court will *presume* abandonment against the inventor. But can the presumption of abandonment arise in this case? The inventor obtained a patent for his invention in England, in May, 1877. On December 1, 1877, he filed this application — three years before his invention was put in public use in this country, which use did not begin until November, 1880.

Now under § 4887 of the Revised Statutes, it is provided that :

"SEC. 4887. No person shall be debarred from receiving a patent for his invention or discovery, nor shall any patent be declared invalid, by reason of its having been first patented or caused to be patented in a foreign country, unless the same has been introduced into public use in the United States for more than two years prior to the application. But every patent granted for an invention which has been previously patented in a foreign country, shall be so limited as to expire at the same time with the foreign patent, or, if there be more than one, at the same time with the one having the shortest term, and in no case shall it be in force more than seventeen years."

The invention in this case was first patented in England.

The application was filed here before the invention was put in public use at all, and, therefore, all the requirements of the law having been complied with, it is submitted that no *presumption* of abandonment can arise in view of the provision of the statute above quoted and of. the facts in this case.

It will be observed that the statutes do not require a bill to obtain a patent to be filed before the invention has been in public use two years. No such limitation could have been contemplated, because the bill cannot be filed until the remedy by appeal in the Patent Office and the Supreme Court of the District of Columbia has been exhausted, and the application may be filed any time before the invention has been in public use or on sale for two years. An application may be filed when the invention has been in public use twenty-three months. In such a case, if the application were finally rejected, it would be *impossible* to file such a bill before the invention had been in public use two years. It would probably be in public use from three to five years before remedy by bill in equity could possibly be invoked.

The question of abandonment raised on an application for a reissue to broaden claims is entirely different from any question presented in this case. In a case of reissue the applicant has accepted a patent of limited scope when he had a right to obtain a broader one. Through inadvertence, accident or mistake on his own part, he has omitted to properly claim his invention, and the patent is a formal declaration to the public that what is described and not claimed is either old or is dedicated to its use. Under such circumstances it is held that the inventor will not be permitted to withdraw what he has formally and notoriously dedicated by his own negligence to public use, except under specially favorable circumstances. *Miller* v. *Brass Co.*, 104 U. S. 350; *Mahn* v. *Harwood*, 112 U. S. 354. Both of these cases clearly distinguish between a reissue to broaden claims and a reissue to narrow claims or correct errors of description, and hold that while lapse of time before applying for reissue is of prime importance in the former case, it is of small consequence in the latter. The difference between the two rests in the fact that when reissued

to narrow claims, the original patent contains no disclaimer, express or implied. It will be observed that in both cases the reissued patent takes from the public something it previously enjoyed, because even where the claims are limited by reissue the inventor surrenders a too broad, but *invalid* patent; and receives a narrower, but *valid* patent.

Although the case before the court, as far as the question of abandonment is concerned, resembles in its essential features a reissue to narrow claims more than it does a reissue to broaden claims, yet it differs from both, and the complainant here has equities superior to those of any applicant for a reissue.

Through the mistakes of the Patent Office, the complainant has already been subjected to great hardship by being denied protection for his invention for many years, and even if he obtains a patent now, in view of his English patent, it will be of limited duration. He has complied with all the provisions of the law. His invention has failed to obtain protection through no inadvertence, accident or mistake on his part. He has not accepted a patent with too narrow claims. The public has had no formal notice that the invention is old or is dedicated to its use. He does not ask permission to correct his own mistakes, as every applicant for a reissue does, whether he seeks to limit or expand his claims; but he asks this court to correct the errors of the Patent Office, and to give him protection, which has been unjustly denied, for his invention.

In the absence of any statutory limitation as to the time in which a person may commence an action to sustain or enforce an equitable right, it would seem that abandonment, which is primarily and essentially a fact to be established by proof, could not be presumed in the present case.

*Mr. Assistant Attorney General Maury* for appellee.

MR. JUSTICE BLATCHFORD, after stating the case as above reported, delivered the opinion of the court.

We are of opinion that this decree must be affirmed. It is provided by § 4894 of the Revised Statutes as follows: "SEC.

4894. All applications for patents shall be completed and prepared for examination within two years after the filing of the application, and in default thereof, or upon failure of the applicant to prosecute the same within two years after any action therein, of which notice shall have been given to the applicant, they shall be regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the Commissioner of Patents that such delay was unavoidable." The applicant failed to prosecute his application within two years after the last action therein, of which notice was given to the applicant. The decree of the Supreme Court of the District of Columbia was made on the 30th of January, 1880, and this bill was not filed until the 3d of May, 1883. No excuse for the laches and delay is set up in the bill and none is shown in the proofs, nor is it alleged in the bill that the delay was unavoidable. Although, as was said by this court in *Butterworth* v. *Hoe*, 112 U. S. 50, 61, (citing *Whipple* v. *Miner*, 15 Fed. Rep. 117; *Ex parte Squire*, 3 Ban. & Ard. 133; and *Butler* v. *Shaw*, 21 Fed. Rep. 321,) the proceeding by bill in equity, under § 4915, on the refusal to grant an application for a patent, intends a suit according to the ordinary course of equity practice and procedure, and is not a technical appeal from the Patent Office, nor confined to the case as made in the record of that office, but is prepared and heard upon all competent evidence adduced and upon the whole merits, yet the proceeding is, in fact and necessarily, a part of the application for the patent. Section 4915 declares that the judgment of the court, if in favor of the right of the applicant, is to be a judgment that the applicant "is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear;" and that, if the adjudication be in favor of the right of the applicant, it shall authorize the Commissioner to issue the patent, on the filing in the Patent Office by the applicant of a copy of the adjudication and on his "otherwise complying with the requirements of law." One requirement of law is, by § 4894, that the application shall be regarded as abandoned if the applicant fails to prosecute the same within two years

after any action therein of which notice shall have been given
to him, "unless it be shown to the satisfaction of the Commis-
sioner of Patents that such delay was unavoidable." All that
the court which takes cognizance of the bill in equity, under
§ 4915, is authorized to do is to adjudge whether or not "the
applicant is entitled, according to law, to receive a patent," and,
after an adjudication in his favor to that effect, the Commis-
sioner is not authorized to issue a patent unless the applicant
otherwise complies with the requirements of law. In the
present case, there would be no compliance with the require-
ments of law, in view of the delay for more than two years,
unless it be shown to the satisfaction of the court that the
delay was unavoidable. The jurisdiction of the application
being transferred, *pro tanto*, to the court, by virtue of the bill
in equity, it cannot adjudge that the applicant is entitled, ac-
cording to law, to receive a patent, unless he shows to the sat-
isfaction of the court that the delay was unavoidable, under
an allegation to that effect in the bill. The presumption of
abandonment, under § 4894, unless it is shown that the delay
in prosecuting the application for two years and more after
the last prior action, of which notice was given to the appli-
cant, was unavoidable, exists as fully in regard to that branch
of the application involved in the remedy by bill in equity as in
regard to any other part of the application, whether so much
of it as is strictly within the Patent Office, or so much of it as
consists of an appeal to the Supreme Court of the District of
Columbia under § 4911. The decision of the court on a bill in
equity becomes, equally with the judgment of the Supreme
Court of the District of Columbia on a direct appeal under
§ 4911, the decision of the Patent Office, and is to govern the
action of the Commissioner. It is, therefore, clearly a branch
of the application for the patent, and to be governed by the
rule as to laches and delay declared by § 4894 to be attendant
upon the application.

*Decree affirmed.*