COLMAN et al. v. AMERICAN WARP DRAWING MACH. CO.

(District Court, D. Massachusetts. August 12, 1915.)

No. 594.

PATENTS ☞283(1)—SUIT FOR INFRINGEMENT—COUNTERCLAIM.

The defendant in an infringement suit cannot set up as a counterclaim under equity rule 30 (198 Fed. xxvi; 115 C. C. A. xxvi) a cause of action to obtain a patent for the same invention under Rev. St. § 4915 (Comp. St. 1913, § 9460), if in any case it appears from the answer (1) that the court would not have had "cognizance" of an original suit for that purpose, because of the residence of the parties; (2) that defendant is not the "applicant" whose application was refused, and to whom alone the right of action is expressly given, and the applicant is not a party to the infringement suit, but an assignee; (3) that a suit by such applicant and defendant jointly to obtain the patent is pending in another jurisdiction; and (4) that more than a year has elapsed since final rejection of the application.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 448-450, 452; Dec. Dig. ☞283(1).]

In Equity. Suit by Howard D. Colman and others against the American Warp Drawing Machine Company. On motion of complainants to strike out a part of the answer pleading a counterclaim. Motion granted.

Horace Van Everen, of Boston, Mass., for plaintiffs.

Emery, Booth, Janney & Varney and Charles D. Lanning, all of Boston, Mass., for defendant. ·

DODGE, Circuit Judge. The bill charges the defendant corporation with infringing United States patent No. 1,115,399, issued October 27, 1914, to the plaintiff Colman, assignor to himself and two other plaintiffs. The three plaintiffs describe themselves as copartners, doing business as Barber-Colman Company.

The patent has 107 claims in all. Nineteen of them are infringed, according to the bill, which seeks an injunction and an account.

The answer, not denying the issuance of the patent sued on, does deny that Colman was first inventor of the improvements covered by it, and denies that the patent was lawfully issued to him. It prays dismissal on these grounds.

All the above is contained in the first 28 paragraphs of the answer, as filed under the head "I. Answer." These paragraphs constitute the answer proper. They are followed by 23 paragraphs under the head "II. Counterclaim," in which is set out what the defendant contends to be a counterclaim under equity rule 30 (198 Fed. xxvi, 115 C. C. A. xxvi). In them are recited at length successive proceedings had in the Patent Office, in the Supreme Court of the District of Columbia, and in the Court of Appeals of said District, relating to an interference declared in the Patent Office October 9, 1906, between an application filed June 23, 1898, by one Field, and an application filed May 18, 1906, by the plaintiff Colman. According to the recital, the Examiner of Interferences held Colman entitled to priority June 4,

1910; an appeal to the Examiners in Chief resulted in Colman's favor December 27, 1911; an appeal to the Commissioner of Patents also resulted in Colman's favor June 12, 1912; an appeal to the Court of Appeals for the District of Columbia again resulted in Colman's favor June 3, 1913; a writ of certiorari to review the latter judgment was denied by the Supreme Court of the United States October 29, 1913; Field was then notified by the Commissioner that his claims involved in the interference were finally rejected February 24, 1914; and on October 27, 1914, the patent in suit was issued to Colman and the other plaintiffs in this case.

The defendant also recites, as part of its so-called counterclaim, that Field assigned his application to one Clark, trustee, on June 15, 1898; that Clark assigned it to the defendant October 27, 1906; that the right to issuance of patent on said application has been thus vested in the defendant; and that it—

"has no remedy for the further prosecution of said Field's claim for patent except by remedy in equity * * * under the provisions of Rev. St. § 4915."

The defendant goes on to allege that the Patent Office proceeding, affirmed as above by the Court of Appeals for the District of Columbia, "has arbitrarily and without warrant of law deprived the defendant and said Field" of certain rights alleged in substance to be the presumptive right to patent arising from Field's prior application, the right to prove Field to have anticipated Colman, the right to compel Colman to prove that he anticipated Field by evidence other than that accepted as sufficient by the various tribunals above mentioned.

What then follows in the answer as filed is under the head "III. Prayer." It asks the court to adjudge and decree as specified in 8 numbered paragraphs following. Those numbered 5–8 are the only ones asking relief relating to the bill and answer proper, viz.: Paragraph 5 asks that the patent in suit be held void as to all its claims involved in the Field interference, or based on the invention described in Field's application; paragraph 6, that 7 of its claims (80–84, 86, 87) be held invalid, because not based on any disclosure in it; paragraph 7, that it be held invalid as to all the 19 claims in suit, because anticipated; paragraph 8, that, in any event, the 7 claims mentioned in paragraph 6 and also 7 others (2, 74, 88–91) be held invalid, because covering no invention patentable over the prior art. But of the above specified claims 5 only are among the 19 now sued on—Nos. 2, 74, 87, 90, and 91.

The remaining paragraphs under this last head, numbered 1–4, inclusive, relate only to the matters alleged under the so-called counterclaim. Paragraph 4 is the only one asking relief according to Rev. St. § 4915 (Comp. St. 1913, § 9460). The court is therein asked to adjudge and decree that the defendant is entitled, according to law, to receive a patent for Field's inventions as specified in his claims involved in the above interference. Paragraphs 1–3, inclusive, only ask the court to make certain rulings or findings tending (as the defendant contends) to support that conclusion.

What appears as above in the answer under the heading "II. Coun-

terclaim," and in paragraphs 1-4 under the heading "III. Prayer," might be the subject of an independent suit in equity against the plaintiffs, because of the express provision in Rev. St. § 4915, that the applicant to whom a patent has been refused, either by the Commissioner of Patents or by the court to which an appeal is taken from his decision, "may have remedy by bill in equity"; that such remedy is to be administered by "the court having cognizance thereof, on notice to adverse parties"; and that the remedy is to consist, so far as the court is concerned, in a judgment that such applicant is entitled to the patent.

But, unless it is clear that such an independent suit could properly be called a cross-suit by the present defendant against the present plaintiffs, and brought upon a "claim" against them such as can be rightly described as a "counterclaim" within the meaning of rule 30, the court cannot properly pronounce a final judgment in this case both upon the original claim and the so-called "cross-claim," and the plaintiffs' motion to strike out should be granted.

As has appeared, it is Field's claim for patent, further prosecution whereof the defendant seeks to accomplish by the portion of its answer here in question. The complaint therein made is that Field, as well as itself, has been deprived of the right to obtain a patent on Field's application. It also alleges that it has already brought, jointly with Field, a suit under section 4915 for the same purpose, and making the same complaints, in an Illinois District Court. To this suit further reference is made below.

"The applicant" in the interference proceedings is the only party to whom section 4915 expressly gives the remedy by bill in equity, and on the defendant's allegations Field was the only applicant in the interference proceedings here involved. Field is nowhere made a party to the present suit. Under the Patent Acts of 1836, 1837, and 1839, the assignee to whom an applicant had transferred his rights after final refusal of a patent was held entitled to the statutory remedy by bill in equity in his own name. It was said that he was "at least within the spirit," if not within the letter, of the statutory provisions. Gay v. Cornell, 1 Blatch. 506, Fed. Cas. No. 5,280 (1849). But even if this defendant, under the somewhat different provisions of the act of 1870, now Rev. St. § 4915, might be regarded as "the applicant," and entitled to the statutory remedy in its own name independently of Field, it can hardly claim this position in view of its own allegations above referred to. Field, it would seem, might in any case bring the statutory bill in his own name as applicant, and maintain it in the absence of intervention by the defendant. Wende v. Horine (C. C.) 191 Fed. 620. Under equity rule 37 (198 Fed. xxviii, 115 C. C. A. xxviii), it would also seem, Field could bring the bill in his own name without joining the defendant, even if it be true that the defendant is the real party in interest, because, as "the applicant" he is the party expressly authorized by statute. It would be difficult, in view of all the above, to call the independent suit in equity under section 4915 a cross-suit between the parties to the infringement suit, with which Field has no connection.

The difficulty of doing so is increased by the difference in scope and character of the relief sought in the two proceedings. The relief obtainable in this suit, if any, is an injunction forbidding the defendant to infringe further the patent issued to the plaintiffs and ordering that it account to them for profits and damages; a decree which this court would have the power to carry into effect. The relief obtainable, if any, by the defendant and Field, under section 4915, is a decree that Field, instead of the plaintiffs, is entitled to receive a patent for his invention as specified in his rejected application. Such a decree, when filed in the Patent Office, is to "authorize" the issue of such a patent, but with its entry the power of this court in the proceedings is exhausted. Such a patent would not necessarily be issued to the defendant. Though it might be so issued, under Rev. St. 4895 (Comp. St. 1913, § 9439), whether it should be issued to the defendant or to Field would be within the commissioner's discretion. See Elliott-Fisher Co. v. Underwood Co. (C. C.) 176 Fed. 372; Thoma v. Perri (D. C.) 205 Fed. 632.

It can hardly be said, therefore, that in adjudging, under section 4915, that Field is entitled, as between himself and Colman, his opponent in the interference, to a patent for the inventions involved in that controversy, the court would be "pronouncing a final judgment" upon a "cross-claim" by the present defendant against the present plaintiffs, in the ordinary sense of the words. Still less would it be pronouncing a final judgment upon any "counterclaim" by this defendant against these plaintiffs, if, as I have held in Terry, etc., Co. v. Sturtevant, etc., Co. (D. C.) 204 Fed. 103, it is not every claim capable of being asserted by suit in equity that can be called a "counterclaim" within the meaning of rule 50.

It is said that an adjudication according to section 4915, in favor of Field's right to a patent as against Colman, might have been had upon a cross-bill filed in such a case as this, prior to the adoption of the new equity rules, and that rule 30 therefore entitles the defendant to maintain a counterclaim asking for the same relief. Appert v. Brownsville, etc., Co. (C. C.) 144 Fed. 115 (W. D. Pa. 1904), Laas v. Scott (C. C.) 161 Fed. 122 (E. D. Wis. 1908), are cited; also the remarks in Schmertz, etc., Co. v. Pittsburg, etc., Co. (C. C.) 168 Fed. 73, relating to Appert v. Brownsville, etc., Co., by the same learned judge who decided it. Both the first-mentioned cases were infringement suits, and in each a cross-bill for relief under section 4915 was filed, heard, and its merits determined. But in neither case does any objection appear to have been raised on the part of the plaintiffs to the propriety of the cross-bill, so that neither Circuit Court can be said to have decided any question which might have been raised by such objection. In Kilbourn v. Hirner (C. C.) 163 Fed. 539 (E. D. Pa. 1908), a suit in equity under section 4915, a cross-bill by the defendant charging infringement by the plaintiffs of the patent awarded him as against them in the interference, was stricken out as not germane to the original bill. Citing Appert v. Brownsville, etc., Co., the court said:

"No doubt, if the situation were reversed, and if this were a suit for infringement brought by the complainants, and the defendant were seeking to file a cross-bill to secure the hearing provided for by section 4915, the defense thus offered would perhaps be legitimate and germane."

For the proposition that the defendant's "counterclaim" would be proper matter for a cross-bill in this suit, nothing more convincing in the way of authority is found than the above suggestion. But if, as held in Kilbourn v. Hirner, above cited, and as does not seem to be disputed, relief against infringement of a patent could not be had by cross-bill in a suit under section 4915 brought by an applicant to whom the same patent had been refused—and this for the reason that the subject-matter and the relief sought are not germane—I do not find sufficient ground for holding the contrary to be true when the situation is reversed.

The defendant's allegations regarding the suit it has already brought under section 4915 jointly with Field are that it and Field—

"as joint plaintiffs, filed a bill of complaint against these plaintiffs as defendants, in the District Court of the United States for the Western Division of the Northern District of Illinois, which proceeding is now pending, these plaintiffs as defendants having duly appeared therein, as hereinabove set forth."

The above quotation is from paragraph 15 under the heading "II. Counterclaim." In paragraph 26, under the heading "I. Answer," there are similar allegations as to the bringing of the same suit, from which it further appears that the defendants' appearance was entered "some months prior to the filing of the bill of complaint herein," on December 22, 1914.

The present plaintiffs live at Rockford and at Evanston, Ill., carrying on their business in Rockford. By filing their bill for relief under section 4915 in the District Court there having jurisdiction, the defendant and Field resorted to "the court having cognizance thereof," which section 4915 authorizes to act in such cases, as has been admitted by the present plaintiffs when they duly appeared as defendants to answer the present defendant and Field in that court. There is nothing to show that any other court answered that description, as might have been the case could the plaintiffs have been "found" in any other jurisdiction. See Thoma v. Perri, above cited.

By coming into this court some months later with their bill for infringement of the patent which had been granted them, the plaintiffs cannot be said, in my opinion, to have made this "the court having cognizance of" the claim by the defendant and Field to relief under section 4915; nor of the same claim, whether presented by Field alone, or by the defendant alone after discarding Field. When, as here, the fact that he neither resides, nor is found for purposes of service, within the jurisdiction of the court, would prevent a nonresident plaintiff from being held to answer an alleged counterclaim if presented in that court as an independent proceeding, jurisdiction over him for that purpose can exist only by the consent on his part, implied from his resort to that court for the purposes of his original suit. Of course, there is such implied consent when there are statutory provi-

sions for the jurisdiction in such cases. Thus in this state there is legislation, held applicable in the federal courts, permitting an independent cross-suit to be founded on jurisdiction so obtained. Arkwright Mills v. Aultman, etc., Co. (C. C.) 128 Fed. 195. But to be within this statute the cross-suit must be of such nature that the judgment in the one case can be set off against that in the other. The statutory jurisdiction of the court cannot be enlarged by any rule. Rule 30, therefore, cannot be so construed as to effect such a result; nor can it afford any basis for implying consent or waiver of objection to such enlargement on the plaintiffs' part. Unless the present "counterclaim" can be said to "arise out of the transaction, which is the subject-matter of the plaintiff's bill," so that, independently of the new rules, a cross-bill could have been maintained upon it against the plaintiffs' objection, I can find no ground for saying that they have impliedly submitted the questions it raises to the determination of this court.

The difference above referred to between the infringement suit begun by the plaintiffs' bill and the proceeding under section 4915 sought to be begun by the defendant's "counterclaim," in the scope and character of the two proceedings, in the parties respectively involved, and in the nature of the relief sought, prevent me from believing that the defendant's claim to the relief it seeks would be proper matter for a cross-bill in the plaintiffs' suit, or is a proper "counterclaim" within the meaning of rule 30. The defendant urges that what it calls the "interference jurisdiction" of the court is merely auxiliary and supplementary to its "infringement jurisdiction," that the plaintiffs' bill raises what is in reality "strictly an interference contest," that there is in reality "a perfect analogy between the case at bar and an interference suit based on two interfering patents" under section 4918 (Comp. St. 1913, § 9463), and that, so viewed, the defendant's application for relief under section 4915 is a proper and necessary part of its defense to the patent in suit. These contentions it has urged at great length and with much learning and ability. I am obliged, however, to agree with the plaintiffs that there is no such connection between the jurisdiction given the federal courts over questions of interference and that given them over questions of infringement as will support the conclusion sought. The patent having issued, the courts are authorized to restrain violations of rights secured by it according to the ordinary course and principles of courts of equity. They act in questions of interference only after a final result reached by the executive authorities or tribunals to which the determination of such questions primarily belongs, and then only according to special statutory provisions. While their proceedings in such cases, under section 4915, are not appeals, but independent suits in equity (Greenwood v. Dover, 194 Fed. 91, 114 C. C. A. 169), they are nevertheless "in fact and necessarily a part of the application for the patent" (Gandy v. Marble, 122 U. S. 432, 439, 7 Sup. Ct. 1290, 30 L. Ed. 1223), and "something in the nature of a suit to set aside a judgment, and as such not to be sustained by a mere preponderance of evidence" (Morgan v. Daniels, 153 U. S. 120, 124, 14 Sup. Ct. 772,

38 L. Ed. 657). So far as anything set up in the defendant's "counter-claim" is necessary or material to its defense to the plaintiffs' suit, it is, of course, entitled to and will get the full benefit thereof under its answer. If it prevails on the issues thereby raised, the plaintiffs' patent will be held invalid or wrongfully obtained, and the bill there-fore dismissed. But in the suit thereby begun, the court, having reach-ed the above result, cannot be called upon also to determine whether or not the evidence has gone far enough beyond a mere preponderance to warrant setting aside the judgment rendered June 3, 1913, in Colman's favor, and the consequent final rejection of Field's claim, and to adjudge that Field is entitled according to law to receive a pat-ent therefor. I am unable to believe its authority for those purposes sufficiently established.

If Field and the defendant had delayed their resort to the court in Illinois for relief under section 4915 until more than one year from June 3, 1913, had expired, there would have been a failure on the applicant's part to prosecute Field's application within one year after it had been refused upon appeal from the Commissioner, and the ap-plication would have had to be regarded as abandoned, according to Rev. Stats. § 4894, as amended in 1897, c. 391, 29 Stats. 693 (Comp. St. 1913, § 9438). Gandy v. Marble, 122 U. S. 432, 7 Sup. Ct. 1290, 30 L. Ed. 1223; Westinghouse, etc., Co. v. Ohio, etc., Co. (C. C.) 186 Fed. 518. Field, as the applicant and appealing party before the Court of Appeals of the District of Columbia, could not say that notice was not given him, on the day it was rendered by that court, of the decision affirming the Commissioner's rejection of his application. I agree with the plaintiffs that the notice he subsequently received from the Commissioner, dated February 24, 1914, cannot be taken to have extended the period within which section 4894 required the next step in prosecution of his application to be taken, if he was not content to have it treated as abandoned. McKnight v. Metal, etc., Co. (C. C.) 128 Fed. 51. February 1, 1915, the date on which the "counterclaim" was filed in this case, would therefore have been too late. No excuse for the delay is therein suggested.

If, therefore, the proceedings begun under section 4915 in the Illi-nois District Court May 29, 1914, should be dropped and go for noth-ing, it would seem to follow that the Field application must thereupon be regarded as abandoned. The defendant states in paragraph 15 of its "counterclaim" that, having filed this answer and "counterclaim," it "will now proceed to secure" a suspension of further proceedings in said District Court in Illinois. Whether or not it can secure such sus-pension is, of course, for that court to determine. While the proceed-ings there, begun May 29, 1914, remain pending, it cannot be said that Field's application stands abandoned; but I am unable to believe that jurisdiction of those proceedings can be transferred to this court by beginning them over again here under the guise of a "counterclaim," after a lapse of time following the refusal therein complained of which would require their dismissal if then begun here. I think the plain-tiffs are entitled to have their suit proceed here upon bill and answer, without regard to the proceedings in Illinois, except that, as a matter

of convenience, the hearing here might well await the final result there, if sought with due diligence on the part of Field and the defendant.

The plaintiffs' motion to strike out is therefore allowed.