**LANGMUIR et al. v. DE FOREST et al.**

(District Court, D. Delaware. March 22, 1927.)

No. 562.

Patents ⊜328—De Forest, 1,507,016 and 1,507,017, for radio signaling system, sustained against claim of priority of invention.

Bill under Rev. St. § 4915 (Comp. St. § 9460), filed by Irving Langmuir to require issuance to him of patent for the inventions covered by claims of the De Forest patents, Nos. 1,507,016 and 1,507,017, for radio signaling system, dismissed.

In Equity. Suit by Irving Langmuir and the General Electric Company against Lee De Forest and others. Bill dismissed.

See, also, 18 F.(2d) 338.

Samuel Owen Edmonds, of New York City, and Harry E. Dunham, of Schenectady, N. Y., and William G. Mahaffy, of Wilmington, Del., for plaintiffs.

Samuel E. Darby, Jr. (of Darby & Darby), of New York City, and E. Ennalls Berl, of Wilmington, Del., for defendants Lee De Forest and De Forest Radio Telephone & Telegraph Co.

William R. Ballard, of New York City, and Ward, Gray & Ward, of Wilmington, Del., for defendant American Telephone & Telegraph Co.

MORRIS, District Judge. The subject-matter of this suit, brought under R. S. § 4915 (Comp. St. § 9460), by Irving Langmuir and General Electric Company against Lee De Forest, De Forest Radio Telephone & Telegraph Company, and American Telephone & Telegraph Company, is that defined in the counts constituting the issue in interferences Nos. 41,224 and 41,225 in the Patent Office. As a result of the decision of the Court of Appeals of the District of Columbia (298 Fed. 1006), counts 1, 2, 3, 4, 5, 7, and 8 of No. 41,224 (originally a three-party interference, but, by failing to appeal from an adverse decision of the Commissioner of Patents Meissner, the third party forfeited all his rights therein. [Gandy v. Marble, 122 U. S. 432, 7 S. Ct. 1290, 30 L. Ed. 1223, Becker v. Chain Co. (C. C. A.) 273 F. 419, Garfield v. Western (D. C.) 298 F. 659]) were allowed as claims 29, 32, 35, 36, 1, 2, and 6 of De Forest patent No. 1,507,016. Counts 6 and 9 became claims 15 and 17 of De Forest patent No. 1,507,017. These counts, the first four of which are known as the "work circuit" counts and the last five as the "radio signaling" counts, read thus:

"1. In a system for generating electrical oscillations, a work circuit, and means for generating and transmitting the generated oscillations to said work circuit comprising an evacuated vessel having a hot electrode, a cold plate electrode, and a cold grid electrode, said cold electrodes being electrically associated with each other, and a source of current for the hot electrode.

"2. The combination with a work circuit, and means for generating and transmitting the generated alternating currents to said work circuit, comprising an evacuated vessel having a hot and a plurality of cold electrodes therein, said cold electrodes being located at relatively different distances from said hot electrode, means to supply current to said electrodes, and circuit connections between said electrodes.

"3. A work circuit, and means for generating and transmitting the generated oscillations to said work circuit comprising an audion and its associated circuits.

"4. The combination with a work circuit, and means for generating and transmitting the generated oscillations to said work circuit comprising an evacuated vessel having filament, grid, and plate electrodes therein, means to supply current to said electrodes, and circuit connections between said electrodes.

"5. In a radio signaling system, an evacuated vessel including hot and cold electrodes

therein, said cold electrodes being located at relatively different distances from said hot electrode, separate circuits connecting each of the cold electrodes to the hot electrode, said circuits being inductively associated.

"6. In a radio signaling system, an evacuated vessel containing hot and cold electrodes therein, said cold electrodes being located at relatively different distances from said hot electrode, separate circuits connecting each of said cold electrodes to said hot electrode, and means to set up successively increasing pulsations in said circuits.

"7. In a radio signaling system, an evacuated vessel including hot and cold electrodes therein, said cold electrodes being located at relatively different distances from said hot electrode, separate oscillating circuits connecting each of said cold electrodes to said hot electrode, said circuits being inductively associated.

"8. In a radio signaling system, an evacuated vessel containing hot and cold electrodes therein, said cold electrodes being located at relatively different distances from said hot electrode, separate circuits connecting each of said cold electrodes with said hot electrode, said circuits being inductively associated, a source of electromotive force and a signaling device being included in one of said circuits.

"9. In a radio signaling system, an audion including hot and cold electrodes therein, said cold electrodes being located at relatively different distances from said hot electrode, separate circuits connecting each of said cold electrodes to said hot electrode, and means to cause said circuits to react upon each other."

The two counts known as "double audion" counts, of the two-party interference, No. 41,225, which now constitute claims 11 and 13 of De Forest patent No. 1,507,016, provide:

"1. In a radio signaling system an evacuated vessel containing a hot electrode and a plurality of grid electrodes and a plurality of wing electrodes, circuits connecting each of said grid electrodes and said wing electrodes with said hot electrode, the circuits of the grid electrodes being inductively associated with the circuits of the wing electrodes.

"2. In a radio signaling system, an evacuated vessel containing a plurality of wing electrodes and a plurality of grid electrodes, a filament electrode interposed between said grid electrodes and between said wing electrodes, circuits connecting each of said wing and grid electrodes with said filament electrode, the circuits of said grid electrodes being inductively associated with the circuits of said wing electrodes respectively."

Originally the three-party interference, No. 41,224, contained three additional counts. During its pendency, the last three counts were extracted therefrom and made to form the subject-matter of a separate interference, No. 41,790, in which Armstrong joined. The judgments of the Court of Appeals of the District of Columbia (54 App. D. C. 391, 298 F. 1006) and of this court (18 F.[2d] 338) in the four-party interference were in favor of De Forest. The counts there in issue called for the production of alternating currents with an audion by means of the feed-back circuit. Counts 1 to 4 of the three-party interference are broader than those already passed upon, in that they lack the limitations that the oscillations be produced by any specified circuit arrangement, that the oscillations be sustained or that there be means for varying the frequency. These counts do, however, contain one express limitation not found in the four-party interference counts. That limitation is the work circuit. But the August 6 and August 29, 1912, circuits of De Forest, set out in the opinion in the four-party interference, contained a work circuit—that in which the telephone receivers were included. As the earliest date claimed for Langmuir is February, 1913, priority for the invention of counts 1 to 4 of the three-party interference must be awarded to De Forest.

Counts 5 to 9 of the three-party interference and the two counts of the two-party interference are directed to the feed-back circuit broadly and generically. They are not limited, as are the counts of the four-party interference, to the feed-back circuit as a means for producing a specific result. They are wide enough to cover the specified circuit, whatever results may be had thereby. Nor is the introductory clause, "in a radio signaling system," an element of the combination set out in the claims. Moreover, it does not convert the claims into applications of the feed-back circuit to a radio signaling system. Claims so limited constituted the subject-matter of interference No. 41,223 between Langmuir and Armstrong, in which the latter prevailed. It does not limit the invention defined by the actual combination claimed. Stearns v. Russell (C. C. A.) 85 F. 218, 224; Diamond Drill Co. v. Kelly (C. C.) 120 F. 289, 293; Sly v. Russell (C. C. A. 6) 189 F. 61, 65; Western Electric Co. v. La Rue, 139 U. S. 601, 605, 606, 11 S. Ct. 670, 35 L. Ed. 294. "A patentee who is the first to make an invention is entitled to his claim for all the uses and advantages which belong to it." Stow v. Chicago, 104 U. S. 547, 550 (26 L. Ed. 816).

The distinguishing characteristic of the two counts of the two-party interference, No. 41,225, resides, as I see it, in the plurality of grid electrodes and in the plurality of wing electrodes. These counts, as I read them, do not require a separate and independent circuit for each electrode. Were the contrary true, neither Langmuir nor De Forest could meet their requirements.

The work done by De Forest in August, 1912, as found in the four-party interference recently decided here under R. S. § 4915, which findings I see no reason to modify, in my opinion completely meets and satisfies all the requirements of each count here in issue as herein interpreted.

As that date antedates that claimed by Langmuir, the bill of complaint must be dismissed.