## PARKER v. COMMISSIONER OF PATENTS et al.

### No. 19 Civil.

District Court, W. D. Pennsylvania.

May 6, 1940.

W. G. Sullivan, of Erie, Pa., and Frank M. Slough, of Cleveland, Ohio, for plaintiff.

H. C. Lord, of Erie, Pa., for defendants.

SCHOONMAKER, District Judge.

This is an action under Section 4915, R.S. 35 U.S.C.A. § 63, in which plaintiff as assignee of John W. Holt application for a patent for an improvement in plural-rimmed-wheel organizations in the automobile art, is asking this court to adjudge that plaintiff is entitled to receive a patent for the invention disclosed in said application. The Holt application was filed July 19, 1924, as Serial No. 726,909. Holt assigned this application to the Parker Wheel Company of Cleveland, by assignment dated July 2, 1924, but not recorded in the Patent Office until May 28, 1931; and in the meantime, Holt prosecuted the application in the Patent Office as though he were the owner thereof. On December 28, 1935, the Parker Wheel Company assigned said application to the plaintiff herein.

The Erie Malleable Iron Company is the owner of Patent No. 2,178,316, which issued October 31, 1939, on application of Jewell W. Vanderveer, filed February 16, 1927, Serial No. 168,728, which had been assigned to the Erie Malleable Iron Company. This Vanderveer patent is also for improvement in demountable-rim wheels. This Vanderveer patent was issued following interference proceedings in the Patent Office involving the Holt application, which resulted in a decision in favor of Vanderveer. The Holt application was then denied; and the plaintiff, the present owner of the Holt application, brought this suit under the provisions of Sec. 4915, R.S.

The only issue in the present suit is whether or not plaintiff is entitled to a patent on the Holt application which the Commissioner of Patents refused. The right of defendants to a patent under the Vanderveer application is not involved, except as it may preclude right of plaintiff to a patent on the Holt application. See Gandy v. Marble, 122 U.S. 432, 7 S.Ct. 1290, 30 L.Ed. 1223; Hill v. Wooster, 132 U.S. 693, 10 S.Ct. 228, 33 L.Ed. 502; Cleveland Trust Co. v. Berry, 6 Cir., 99 F.2d 517, 521.

The counts in controversy in the interference proceedings in controversy before the Patent Office, originated in the Vanderveer application. They are:

Count 1 (Claim 12 of the Vanderveer patent and Claim 16 of the Holt application): "A Vehicle wheel comprising a tapered axially inner seat at its outer periphery; an inner rim engaging said inner seat; an outer rim arranged on the periphery; means between the rims positively alining said rims in alinement with a plane at right angles to the axis of the wheel, said alining means being removable to permit the outward demounting of the inner rim; and means clamping said alining means and inner rim together with the inner rim engaging said seat." This count is the subject-matter of Interference No. 71, 381.

Count 2. (Claim 1 of the Vanderveer Patent and Claim 13 of the Holt application): "A vehicle wheel having a tapered seat at its outer periphery; a demountable rim having an engaging surface only at one edge engaging said seat; alined means initially and positively locating the rim in alinement with a plane at right angles to the axis of the wheel; and clamping means forcing the engaging surface of the rim and seat together." The two interferences involving these two counts were later consolidated in the Patent Office, and the consolidated interference was given No. 71,381.

Thereafter, on October 6, 1938, upon a final hearing in said consolidated interferences, the Examiner of Interferences awarded priority of invention of the subject-matter in issue to John W. Holt. Vanderveer then filed an appeal to the Board of Appeals of the Patent Office from the decision of the Examiner of Interferences; and, after hearing, the Board of Appeals reversed the decision of the Examiner, awarding to Vanderveer priority of the subject-matter in issue in the consolidated interference.

In its opinion, the Board of Appeals said:

"Taking up first the question as to whether the counts read upon the disclosure of the party Holt. These counts originated in the Vanderveer application and the split ring 14 of Vanderveer is the aligning means set forth in the counts. In count 1 this means is specified as removable. In count 2 it is specified as initially functioning to align the parts. If, in the Holt application, an initial aligning means is present, it must be the notches in the outer ends of the long spokes. Certainly this aligning means is not removable as set forth in Count 1.

"Both counts set forth a tapered seat. In the party Holt's disclosure, this must be regarded as the tapered portions of the notches in the spokes nearest to the inner portion of the wheel. There is considerable dispute between the parties as to the manner in which the rim engages the outer ends of the spokes, but we believe that it is reasonable to hold that all that the party Holt has clearly shown is a series of spoke ends containing notches, which ends and notches substantially fit the rim and its bead. It is thought that probably at times the rim proper will bear against the end of a spoke. At other times the bend of the bead may rest against the bend of the notch and hold the remaining portion of the rim slightly away from the end of the spoke. In other words, we do not consider that it is material in the Holt construction whether or not the rim is clamped against the tapered portion of the seat, as set forth in the counts, when the levers K are forced into position. When the parts are tightened up, the rim cannot move radially and the bead will prevent axial movement of the rim with respect to the spokes. This, we think, is the essence of the Holt disclosure.

"In the Vanderveer application, when the ring 14 is snapped into its groove, it is positively stopped from outward movement by the right-angular edge of the groove shown at 6a. While it would appear that, when the rim in the Holt disclosure is placed in the notches in the ends of the long spokes with the short spokes at the lower portion of the wheel, the rim probably would be perpendicular to the axis of the wheel, we believe that this would not necessarily occur, and we think, therefore, that certain sides of each of these notches cannot be regarded as a means for positively aligning the rim in the manner specified in the counts.

"It is our opinion that the counts read with a definite meaning upon the Vanderveer disclosure but that if they are to be construed as reading upon the Holt disclosure, they must be given a forced and substantially meaningless construction. It is our opinion that they do not properly read upon that party's disclosure."

The effect to be given to this decision of the Patent Office is stated by the Supreme Court in Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 773, 38 L.Ed. 657, as follows: "Upon principle and authority, therefore, it must be laid down as a rule that, where the question decided in the patent office is one between contest-

ing parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction. Tested by that rule, the solution of this controversy is not difficult. Indeed, the variety of opinion expressed by the different officers who have examined this testimony is persuasive that the question of priority is doubtful, and, if doubtful, the decision of the patent office must control."

This rule of Morgan v. Daniels, supra, was applied and followed by the Circuit Court of Appeals in this circuit: General Talking Pictures Corp. v. American T. Corp., 3 Cir., 96 F.2d 800.

After a careful review of all the testimony, we find ourselves in complete accord with the findings of the Board of Appeals of the Patent Office that the counts in the interference do not properly read on Holt's disclosure. The plaintiff offered no evidence at the trial which carries thorough conviction to the contrary.

In arriving at this conclusion, we have been guided by the principles announced in the recent case of Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 57, 59 S.Ct. 8, 83 L.Ed. 34, in which it is held that a patent does not extend beyond the invention described and explained as the statute requires; that it cannot be enlarged by claims not supported by the description; and that it cannot be broadened by amendment so as to embrace an invention not described in the application as filed, at least when adverse rights have intervened.

Now, in considering whether or not the Holt structure reads on the counts involved in the interference, we find the Holt structure to be of an expanding wheel type with four long spokes and four short spokes. The long spokes have shoes cast on the spokes. The faces of these shoes are ribbed. In the lightest structure illustrated (Fig. 1 and 2), the ribs are U-shaped, there being two axially-extending ribs along the sides, and one end rib. In the other structures, the ends of the spokes are box-shaped, making ribs at the sides and ends of the shoe. Each of the ribs of the shoe is notched through, one pair on the inner end of each shoe, and one pair on the outer end of each shoe. The bottoms of these notches are inclined. The rims have inwardly-extending beads on their in-

ner peripheries with inclined edges, which beads are received by the notches. The ends of the shoes at the sides of the notches have flat surfaces, except for the circumferential curve of the wheel; and these surfaces form contacts or seats for the rims at the base of the beads. Movable shoes having the same faces as the fixed shoes are provided for the short spokes. These movable shoes have inwardly-extending lugs, the inner radially faced edges of the lugs being inclined. Toggle levers are pivoted on the shoulders of the spokes and engage these lugs. As the shoulders are set up, the shoes are moved to expand the wheel and set the rims in place on the shoes. The drawings of the Holt application do not show contact between the flats at the sides of the notches and the inner surfaces of the rims at the base of the beads. The specification, as amended, calls for a double seating, definitely specifying seating in the bottoms of the notches, and the original specification, which is retained, definitely specifying a seating at the flats at the sides of the notches. The working drawings presented in the case show contact for the rims both on the flats and the bottom of the notches.

In the Holt structure, we do not find any removable aligning means called for by Count 1 of the interference. Indeed we are doubtful as to whether or not there is any aligning means in the Holt structure. If there are, it must be in the notches of the long spokes. It is contended that the inclined bottom that shoves the rim over against the shoulder in the notch is the aligning means. If that is the aligning means, it certainly is not removable as called for in Count 1.

As for Count 2, we do not find in the Holt structure any provision for initial alignment, as called for in this count. If there is a swinging of the rim as described in the Holt application and its amendments, there can be no initial alignment. The mere fact that the rim might hang perpendicularly to the axis prior to clamping, is not the positive initial alignment called for by Count 2. In fact, the very swinging to alignment precludes initial alignment called for by this count.

The counts in the interference originated in the Vanderveer application; and it would appear proper to consider the structure to which these claims were originally directed. As distinguished from the Holt expanding-wheel type, the Vanderveer

structure is a demountable-rim wheel having tapered or beveled seats. The Vanderveer patent, (page 1, lines 25–52) clearly shows the manner of assembly of the wheel and its effect, as follows: "In reassembling the inner rim it is placed on the beveled surface 4 in the usual manner. The split ring 14 is then snapped into place behind the shoulders 6a. These alined shoulders assure the location of the rim 7 in approximate alinement with a plane at right angles with the axis. Sufficient, clearance is allowed between the shoulder 6a and the split ring 14 to assure the easy entry of the ring and when in place it holds the entire rim in substantial alinement so that the initial part of the rim which is clamped in place cannot be forced inwardly a distance to seriously effect the alinement. This lack of alinement is a problem more particularly present in relation to dual wheels in which the inner rim overhangs the wheel as there is a tendency with the support only at the outer edge of this rim for the lower part of the rim to swing outwardly and the natural part of the rim to force to position initially is the top. The ring 14 is held in place not only by its resilience but when the parts are clamped the ring is also securely clamped by the axial thrust. The shoulder 6a extends circumferentially sufficiently to aline the part. As shown the shoulder is not continuous but I do not wish to be limited to a shoulder broken away at intervals as in the specific embodiment by the spaces between the spokes."

In the Vanderveer invention, the entire problem was one of alignment, a problem peculiar to the tapered-seat mounting. In Holt, there was no problem of alignment. The long and short spoke-expanding wheel of Holt achieved perfect alignment. That was not new with Holt. It was shown in Wiesenacker patent No. 1,181,049. In Vanderveer, the law of the structure is founded entirely on the tapered-axially-wedging seat. In Holt, the incline at the bottom of the notch is immaterial in the functioning of the device. A round-bottom notch would work as effectively as an inclined bottom. In the tapered mounting of Vanderveer, localized clamping pressure urges the rim up the slope of the tapered seat out of alignment at one side of the wheel, with resulting backward downward movement out of alignment at the opposite side of the wheel. In Holt, there is no movement up the slope out of alignment under any localized conditions of pressure or movement out of alignment down a slope. In Vanderveer, the tapered seats form wedges intensifying the seating with a given axially-clamping force. In Holt, the inclines at the bottoms of the notches perform no such function. Round-bottom notches would do just as well. In Vanderveer, the tapered surfaces themselves take up the tolerance variations as to sizes of rims and seats. In Holt, the inclined notch bottoms take up none of the tolerance variations. In Vanderveer, the clamping pressure is all delivered in seating effort on the tapered seats. In Holt, the tolerances may or may not place the seating effort on the inclined bottom of the seat or on the flat. In Vanderveer, the rim is initially positively aligned without any action of the clamping means. It is initially seated and locked in alignment against uneven clamping setup. In Holt, there is no initial locking against uneven clamping. In Vanderveer, the wheel has a tapered seat on its outer periphery permitting direct outward removal of the rim on the removal of the aligning means. In Holt, the rim is buttoned into place. There is no removable aligning device permitting the direct outward removal of the rim along the outer periphery.

It is our opinion that the testimony in this case fully sustains the finding of the Patent Office Board of Appeals.

Our conclusion is that plaintiff has not presented a case which entitles him to have a patent issued to him.

This view makes it unnecessary for us to pass on the question of estoppel raised by defendant, and we pass no opinion on that question.

Findings of fact and conclusions of law in accord with this opinion are filed herewith.