CHICAGO RAWHIDE MFG. CO. v. NATIONAL MOTOR BEARING CO., Inc.

No. 22099–R.

District Court, N. D. California, S. D.

June 18, 1943.

Boyken, Mohler & Gordon, A. W. Boyken, Mark Mohler, and W. Bruce Beckley, all of San Francisco Cal., (Raymond L. Greist, of Chicago, Ill., of counsel), for plaintiff.

A. Donham Owen, of San Francisco, Cal., for defendant.

ROCHE, District Judge.

This is a suit in equity under section 4915, U.S.R.S., 35 U.S.C.A. § 63, growing out of two interference proceedings in the Patent Office between Harry L. Northup, plaintiff's assignor, and Dwight O. Johnson and Antone Fred Anderson, defendant's assignors. In the original interference, No. 76,362, a third party, Roy R. La Croix, was involved and it was his failure to amend his application to include two additional counts presented for inclusion in this interference that necessitated the declaration of the second two party interference, No. 77,960. Interference No. 76,362 was declared before the law abolishing appeals in the Patent Office went into effect. As a result the decision therein of the Examiner of Interferences was appealable in the Patent Office to the Board of Appeals, and was so appealed, while the identically worded decision of the Board of Interference Examiners in the second interference was not so appealable. Both decisions found Johnson and Anderson to be the first inventors and refused a patent to Northup. This was affirmed in the first interference by the Board of Appeals. Northup's assignee thereupon brought this suit, which is not in any sense an appeal but a trial de novo at which new evidence may be introduced. Gandy v. Marble, 122 U.S. 432, 7 S.Ct. 1290, 30 L.Ed. 1223.

The invention relates to fluid seals of the sleeve-shaped packing type and resides in the provision, in the casing of the seal, of a diagonally extending member for clamping the larger diameter end of the sleeve-shaped packing against the inturned flange in the casing, the other features being all old and well-known in the art.

Of the three counts which define the improvement count 1 of interference No. 76,362 is typical. It reads as follows: "A unitary fluid seal adapted for press fit insertion to seal the space between moving parts having cylindrical faces, comprising a cage member having a peripheral surface for press fit engagement with a cylindrical face, and having a radial portion, said radial portion having its edge adjacent the surface to be sealed bent to form an axial flange inclined slightly away from said last named surface, a flexible sealing member extending substantially coaxially of the cylindrical face being sealed and having one end adjacent the inside surface of said axial flange, and an annular clamping washer comprising a web extending between the opposite corners of said cage member and having an axial flange complementary to the flange on said cage formed on its rim adjacent the sealing member."

At the hearing in the Patent Office both parties took testimony and that record was introduced in evidence at this trial. Northup claimed priority of invention and reduction to practice by a laboratory test prior to the filing of their patent application by defendant's assignors, but offered no records or other memoranda relative to such test. The witnesses merely testified from memory that sample seals were tested on one of the testing machines, with successful results. The Examiner of Interferences and Board of Interference Examiners found conception by Northup as early as May 12, 1936, with the making and testing of seals shortly thereafter, but held that "The evidence relating to the testing of the seals is not believed to be sufficient to establish that Northup had successfully reduced to practice." They further held that Northup had suppressed the invention within the doctrine of Mason v. Hepburn, 13 App.D.C. 86, 84 O.G. 147; 1898 C.D. 510. The Board of Appeals held the evidence insufficient to support the finding of suppression but denied the patent to Northup on the ground that witnesses' conclusions, alone, based on memory and unsupported by any other evidence as to the test and its result, were not sufficient to establish successful reduction to practice. On this trial, accordingly, plaintiff has offered additional evidence relative to the test and urges that reduction to practice is thereby shown. The defendant disputes this contention and argues further that, first, plaintiff's additional evidence is still insufficient, in character and amount, within the Morgan v. Daniels rule, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657, and second, even if it be held sufficient to show reduction to practice, plaintiff lost its rights by suppression of the invention.

Plaintiff and defendant are leading manufacturers of oil seals. At the time involved herein the inventor Northup was a clerk with the plaintiff company and inventors Johnson and Anderson were, respectively, plant manager and chief draftsman of the defendant company.

The evidence shows that Northup conceived the invention some time in April, 1936; drawings were made and sent to patent counsel; sample seals were made and tested in plaintiff's laboratory, but no application for a patent was filed until December 22, 1938, some two and a half years later. Plaintiff contends that the test was successful and that the delay in filing was caused by efforts to secure an outstanding dominant claim. Plaintiff secured this claim in December, 1937, however, and not until it learned of the first interference proceedings almost a year later did it file its application. Meantime defendant's inventors had conceived the diagonal construction early in 1937, production was started, and on December 16, 1937, an application for letters patent was filed.

■■■ It is well settled that the party alleging suppression or abandonment has the burden of proving it and showing mere lapse of time is not enough. Nystrom et al. v. Mancuso, 64 F.2d 698, 20 C.C.P.A., Patents, 934. While plaintiff's explanation of its delay is not entirely satisfactory, the defendant has failed to show an intent to suppress or abandon the invention and the Court feels that under these circumstances a finding of suppression or abandonment would be unwarranted. Reduction to practice is therefore the decisive point.

■■■ Plaintiff's evidence on this score varies little from that presented to the Patent Office tribunals. The testing machine is described in more detail, it is true, and its speed and operating time per day are given, but these are still only the witnesses' recollections. The plaintiff has introduced no records of the test, no memoranda of any kind to support this testimony. Over 50 years ago the Supreme Court held, in Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 773, 38 L.Ed. 657, "Upon principle and authority, therefore, it must be laid down as a rule that, where the question decided in the patent office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, *unless the contrary is established by testimony which in character and amount carries thorough conviction.*" (Emphasis supplied). This case is still good law and the test therein laid down has been applied by the courts many times. Plaintiff's additional evidence fails to meet this test. It is not of sufficient weight or character to overcome the findings of the tribunals of the Patent Office.

Furthermore, even if such memory testimony be given full weight, the test so described would not be adequate to constitute reduction to practice. According

to plaintiff's witnesses, the test was made on a cylindrical machine, about eight or ten inches in diameter, and about a foot long, with an end plate bolted on each end through which a shaft protruded. Two seals were tested in the same machine, each being press-fitted into one of the end plates. After the seals had been installed in the end plates the machine was filled with oil to approximately the center of the shaft, and was run at a speed of about 1,000 r.p.m. This test continued for about three weeks. The machine was operated at least eight hours daily, and just before the seals were removed it was operated for a full twenty-four hours. An oil gauge and a thermometer made possible checking of oil levels and temperatures and a pan was placed under the shaft to catch oil drippings that would result from defective sealing. After the seals were removed from the testing machine they were examined by Northup to determine if the leather sealing member had been held firm by the diagonal clamping member. He testified that it had been and that, in his opinion, the test was successful.

■ The reduction to practice must demonstrate the practicability or utility of the invention. Rivise and Caesar, "Interference Law and Practice" (1940 Ed.), p. 396. Whether this can be done by a laboratory test depends upon the invention's character. Such tests have been held sufficient in cases involving chemical processes (Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610; Smith v. Swaine, 127 F.2d 140, 29 C.C.P.A. Patents, 973) and in cases where actual working conditions were duplicated in the laboratory. Capek v. Levis, 55 F.2d 476, 19 C.C.P.A., Patents, 843.

■ Plaintiff's invention is an essential structural element of a general utility oil seal. Oil seals are used on moving shafts to keep the lubricant in and foreign matter out. In order to do this the sealing lip must fit tight against the shaft at all speeds and under the stresses and strains that it is normally subjected to. Failure to do so might have disastrous consequences. Witnesses testified that because the seals are such vital parts of the mechanisms in which they are used, no user would buy a new type without testing it under actual working conditions. It seems clear, therefore, that a test that falls short of imposing on the seal the strains and stresses it would encounter in actual operation is insufficient to constitute reduction to practice.

This was the view of the court in Payne v. Hurley, 71 F.2d 208, 21 C.C.P.A., Patents 1144, a case involving a similar situation. There the inventor of a new spark plug had conducted laboratory tests for sparking under air pressure, determining air leakage and the effect of repeated heating and cooling. The Court of Customs and Patent Appeals held that the spark plug which Payne had invented was not such a device as can be conclusively presumed to be operable by an inspection of it, or by tests other than that of actual operation under ordinary working conditions and that for reduction to practice an engine test was necessary.

It appears from the record that the plaintiff here had laboratory equipment for making adequate tests, but failed to use it. Instead, the seals were placed on a shaft spinning free in thin air. While it is true that the demands made on an oil seal vary considerably, and a new construction might be reduced to practice without undergoing the most rigorous tests, still, the Court has been shown no actual use of which plaintiff's test can be said to be an approximation.

■ The complaint will be dismissed, upon findings of fact and conclusions of law, and a judgment entered decreeing that defendant's assignors, Dwight O. Johnson and Antone F. Anderson, are the true, original and first inventors of the subject matter of said interference and that the defendant, National Motor Bearing Co., Inc., as the assignee of the entire right, title and interest in and to said invention and application, was properly granted letters patent of the United States No. 2,290,593 therefor. The plaintiff will pay costs of suit.