## BEARD *v.* BURTS.

1. The acts of Congress, respectively approved March 3, 1863 (12 Stat. 756), and May 11, 1866 (14 id. 46), extend protection to all persons for acts they committed in subordination to the military authorities engaged in conducting the war, and confer upon them the same exemption from liability to suit which belonged to the President, the Secretary of War, and the department commanders.

2. Where a bill was filed in 1865 for an injunction against cutting wood on the complainant's land in Tennessee, and for an account of what had been already cut, and the defendant, answering, set up that he had cut the wood "as an authorized agent of the government of the United States, and for military purposes, under the direction and authority of the military authorities," and, in further answering, pleaded that he had a right to do so, as appeared by an order or authority from one D. V. Brown, wood agent of the United States military railroads, authorizing him to cut wood on said land, as follows:—

"KNOXVILLE, TENN., May 9, 1865.

"James S. Beard is hereby authorized to cut wood for the U. S. M. R. on the lands of Joseph Burts, John Lyle, Dillard Love, by order of the superintendent.

"D. V. BROWN, *Wood Agent.*"

— and the court, after finding that the defendant's answer was sustained by the proofs, entered a decree dismissing the bill,—*Held,* 1. That the facts so found were conclusive upon a bill of review alleging errors apparent on the face of the decree. 2. That it cannot be properly assumed that the paper signed D. V. Brown was all the evidence from which the court concluded that the defendant acted under the warrant of the military authorities of the government. 3. That as the wood was received by them and used for the military railroads, before operations for the suppression of the rebellion had ceased, the paper, although in form permissive only, was a sufficient justification and defence.

ERROR to the Supreme Court of the State of Tennessee.

*Mr. A. G. Riddle* for the plaintiff in error.

*Mr. Robert G. Ingersoll, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

This was a bill of review, to which a demurrer was interposed by the defendant in the Chancery Court where it was filed; and, after hearing, the bill was dismissed. The decree of the Chancellor was then reversed by the Supreme Court of the State, the demurrer was disallowed, and, without any permission given to the defendant to answer, the decree in the original suit, which the bill sought to have reviewed, was vacated and annulled. The court then proceeded to decree against the

defendant Beard on the original cause of action, and remanded the case to the Chancery Court for an account. An account was accordingly ordered in that court, and a final decree was entered against the defendant, and subsequently affirmed by the Supreme Court. It is to this action that the present writ of error has been sued out.

We have not before us the record of the original suit, which was instituted in 1865, and in which a final decree against the plaintiff was made Nov. 27, 1868. All we can know of it is what we learn from the bill of review. From that it appears to have been a bill for an injunction against trespass and cutting wood upon the plaintiff's land, and for an account of what had already been cut. The defendant answered, admitting that he had cut one hundred and fifty-five and one-third cords of wood, and setting up in justification "that he cut it as an authorized agent of the government of the United States, and for military purposes, and under the direction and authority of the military authorities." In further answer, he averred "that he was protected by the order of the Secretary of War and the commanding general of Tennessee."

In still further answer, he pleaded that he had a right to cut wood on the land, as appeared by an order or authority from one D. V. Brown, wood agent of the United States military railroads, and directed to him, authorizing him to cut wood on said land, as follows: —

"KNOXVILLE, TENN., May 9, 1865.

"James S. Beard is hereby authorized to cut wood for the U. S. M. R. on the lands of Joseph Burts, John Lyle, Dillard Love, by order of the superintendent.

"D. V. BROWN, *Wood Agent.*"

To this answer no replication appears to have been filed; but evidence was submitted, and, after hearing, the Chancellor found that Beard's plea of justification under the laws of the United States, and by military authority exercised thereunder, was sustained, and that he had acted in pursuance to such military authority. The plaintiff's bill was, therefore, dismissed, and no appeal was perfected.

So much is set forth in the bill of review, in which it is also alleged that there was error in the original decree. That

assigned, and the only one that requires notice, is that the pretended authority from D. V. Brown, wood agent, was void, and gave the defendant no authority to cut the wood, as there was no order from the commanding general of the department or Secretary of War authorizing the same, nor any act of Congress authorizing the trespass at the time and place when and where committed.

Such was the case as presented to the Chancellor by the demurrer to the bill, and such was the case submitted to the Supreme Court on the appeal taken from the Chancellor's decree dismissing it.

It is obvious the only important inquiry respects the validity of the authority under which the defendant had acted. It claimed to be a privilege or immunity under the laws of the United States. It was found to be authentic by the Chancellor in his original decree, and its authenticity is not denied in the bill of review. That, therefore, is not open to debate. To sustain a bill of review, there must be errors of law apparent on the face of the decree, or some new matters of fact material in themselves, and discovered after the rendition of the decree. This is the general rule in equity, and it is the rule in Tennessee, declared to be such in the present case. The facts are not open for a re-trial, unless the bill asserts that new evidence has been discovered, not obtainable before the first trial by the exercise of reasonable diligence. The conclusions of fact of the court or Chancellor are conclusive. In view of what the Chancellor found in the original case, it would seem, therefore, his conclusion, that the defendant in cutting the wood was acting under authority from the military authorities, could not be reviewed and set aside. It was a conclusion of fact deduced from evidence he had before him. But the Supreme Court, while admitting that the original decree could not be said to contain error of law upon its face, took the position that the pleadings in the original cause might be looked to; and, if the conclusions drawn from admitted facts showed error in law, a bill of review would lie. Accordingly, the court assumed that the paper signed 'D. V. Brown, wood agent," was all the evidence from which the Chancery Court concluded that the defendant acted under the authority or warrant of the military authorities

of the government provided for by the act of Congress, and held that evidence insufficient and not a justification. For this reason the decree of the Chancery Court dismissing the bill of review was reversed, and so, also, was the decree dismissing the original bill.

We think this was an error. The act of Congress of May 11, 1866, 14 Stat 46, enacted that any acts done or omitted to be done during the rebellion by any person under and by virtue of any order, written or verbal, general or special, issued by the President, or Secretary of War, or by any military officer of the United States holding the command of the department, district, or place where such acts are done or omitted, shall, for the purposes of defence, come within the purview of the act of March 3, 1863. 12 id. 756. The fourth section of the latter act made the order of the President, or under his authority, a defence in all courts to any action for acts done or omitted to be done under or by virtue of such order, or under color of any law of Congress. And the second section of the act of 1866 enacted that, when the order is in writing, it shall be sufficient to produce in evidence the original, with proof of its authenticity, or a certified copy thereof, or, if sent by telegraph, the production of the telegram purporting to emanate from such military officer shall be *prima facie* evidence of its authenticity, or, if the original of such order or telegram is lost, or cannot be produced, secondary evidence thereof shall be admissible, as in other cases.

Now, that the defendant's cutting the wood was under such an order, was, as we have seen, distinctly found as a fact by the Chancellor, and nothing in his decree shows that he found it on the evidence of the paper signed " D. V. Brown, wood agent," alone. No assumption that he did can be justified; and, if it could be, the order, we think, was *prima facie* sufficient. It purported to have been issued by a wood agent for military uses, namely, for the use of the military railroads; and the wood cut was received by the military authorities. It is a legitimate presumption that agents who act for and on behalf of an army in the field are acting under the authority of its commander; and it is but just to the learned court to say that it made no attempt to review the finding of the authenticity of the Brown

paper. They confined their review very properly to inquiring what was the meaning of the order, and they held it no justification of the defendant because its terms were not compulsory, but only permissive. Their language was, " There can be no pretence, upon the facts set forth in the pleadings, that any such thing as military compulsion existed in the case, for the paper only imports on its face a permission to do the act complained of ; " adding, " and even this is not license to do it emanating from any recognized military authority." Hence, said the court, " we conclude that there is error of law in the conclusion of the Chancellor upon the facts."

If in saying the order or permission or license did not emanate from any recognized military authority, the court meant to be understood as itself finding a fact, the determination is a finding without evidence, and in opposition to a finding made on evidence confessedly conclusive. But probably the court did not intend to be so understood.

The real question involved, and the only one the court could consider in the case, therefore, was whether the paper was ineffective as a defence merely because it was in form permissive only. And upon this question we are unable to concur in opinion with the Supreme Court of the State. While it may be conceded that permission to do an act is not compulsion, and that the acts of March 3, 1863, and May 11, 1866, afford no protection to those acting voluntarily and for their own benefit, the pleadings show this to have been no such case. The wood was cut for the military railroads, under military authority, and it was received by the military authorities before military operations in suppression of the rebellion had ceased. The form of the order we regard as immaterial. The plain purpose of the acts of Congress was to extend protection to all persons who might act in subordination to the military authorities engaged in conducting the war. Congress purposed, we think, to confer upon them the same exemption from liability to suit which belonged to the President, the Secretary of War, and the department commanders. The orders of which the acts speak are military orders, and a large proportion of such orders, it is well known, are merely permissive in form. They necessarily leave much to the discretion of those to whom they

are addressed. We cannot doubt that Congress had such orders in view, and that its action was intended to protect against civil suits those who might do acts either commanded or authorized by them.

The decree of the Supreme Court of Tennessee must, therefore, be reversed, and the record remitted with instructions to reverse the last decree of the Chancellor, and direct him to dismiss the bill of review; and it is　　　　　　　*So ordered.*