ON PETITION FOR REHEARING EN BANC
DYK, Circuit Judge,
with whom GAJARSA, Circuit Judge, joins,
dissenting.
In my view today’s majority decision reflects a remarkable departure from settled principles of administrative law. The majority holds today that a patent applicant may decline to present his evidence supporting a patent application to the Patent and Trademark Office (“PTO”), the expert agency charged by Congress with reviewing patent applications. Instead, he may elect to present that evidence to a district court in a de novo proceeding. As the majority itself states, “We hold that 35 U.S.C. § 145 imposes no limitation on an applicant’s right to introduce new evidence before the district court, apart from the evidentiary limitations applicable to all civil actions....” Maj. op. at 1323 (emphasis *1342 added). Moreover, when the district court considers that new evidence, it owes no deference to the PTO’s resolution of the fact issues. Rather, the district court makes de novo findings of fact. See id.
The established administrative law standard, embodied in section 706 of the Administrative Procedure Act (“APA”), 5 U.S.C. § 706, requires judicial review on the agency record and submission of all relevant evidence to the agency. In general, it permits supplementation in court only when agency procedures are inadequate. See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 414-20, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Here, the agency procedures are inadequate only insofar as they do not provide for live testimony.
There is no question that Hyatt’s affidavit evidence here could have been submitted to the Patent Office during the examination. The PTO rules specifically provide that “[w]hen any claim of an application ... is rejected or objected to, any evidence submitted to traverse the rejection or objection on a basis not otherwise provided for must be by way of an oath or declaration under this section.” 37 C.F.R. § 1.132. The Manual of Patent Examining Procedures recognizes that section 1.132 “sets forth the general policy of the Office consistently followed for a long period of time of receiving affidavit evidence traversing rejections or objections.” MPEP § 716 (8th ed. Rev. 7, Sept. 2008).[1] But the examination proceedings are based on a paper record (except for interviews with the examiner). There is no provision for the receipt of live testimony from witnesses.
As discussed below, while section 145 contemplates the introduction of live testimony (because that testimony could not be submitted to the PTO), section 145 does not provide for a trial de novo or excuse the applicant from submitting affidavit evidence to the PTO. Limiting new evidence in the section 145 action to evidence, such as live testimony, that could not be presented to the PTO in the first instance would recognize that section 145 is fully consistent with traditional administrative law standards.
Allowing a trial de novo in the district court denigrates the important expertise of the PTO, is contrary to established principles of administrative law, finds no support in the language of the statute, and is contrary to decisions of at least five other circuits. The majority opinion invites applicants to deliberately withhold evidence from the PTO in favor of a more hospitable district court forum. Today’s decision reflects yet another misguided effort to craft special rules for patent cases that the Supreme Court in other cases has held to be impermissible. See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) (overturning this court’s special test for issuing permanent injunctions in patent cases); MedImmune v. Genentech, Inc., 549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (rejecting this court’s Declaratory Judgment Act test). The majority decision is all the more remarkable because the Court has previously rejected our efforts to craft a special rule for review of PTO decisions in Dickinson v. Zurko, 527 U.S. 150, 152, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999), holding that review under section 141 must proceed under the established administrative law substantial evidence standard. I respectfully dissent.
*1343 I
The majority speaks hardly at all to the important expert role that the PTO plays in patent examination proceedings. The statute provides a variety of grounds for rejecting a patent application. In each ease the inquiry is either entirely factual or has factual components. For example, questions involving anticipation, obviousness, indefiniteness, written description, and enablement typically involve fact questions that are beyond the knowledge of an ordinary layman, and must be addressed by those skilled in the particular art.
The PTO examiner corps and the Board of Patent Appeals and Interferences (“Board”) possess such expertise, and the examination process is carefully structured to utilize that expertise. For example, when a patent application is received, the proposed invention is classified so that it can be given to the proper art unit, which then determines whether the application “properly belongs” in the unit and assigns the application to an examiner within the art unit with the expertise necessary to conduct a field search of the prior art. See MPEP §§ 903.02, 903.08, 904 (8th ed. Rev. 7, Sept. 2008). With respect to the Board, its Standard Operating Procedures state that the Chief Judge should “designate judges as the merits panel to decide ex parte appeals based upon their legal and technical expertise.” B.P.A.I., Standard Operating Procedure 1 (Revision 13) (2009), available at http://www.uspto.gov/ web/offices/dcom/bpai/sopl .pdf.
The importance of PTO expertise in the examination process is confirmed by the history of the statute. Although the original patent act provided for examination of patents, Act of Apr. 10, 1790, ch. 7, 1 Stat. 109, 112, three years later, Congress abolished the examination of patents, and for the next three decades the United States operated under a regime of patent registration. See Act of Feb. 21, 1793, ch. 11, § 1, 1 Stat. 318; P.J. Federico, Evolution of Patent Office Appeals, 22 J. Pat. Off. Soc’y 838 (1940). This approach was found to be entirely unsatisfying.
The legislative history of the 1836 Act, substituting an examination system for the registration system, cites the following evils of the existing registration system:
A considerable portion of all the patents granted are worthless and void ...; [2] The country becomes flooded with patent monopolies, embarrassing to bona fide patentees, whose rights are thus invaded on all sides ...; [3] Out of this interference and collision of patents and privileges, a great number of lawsuits arise, which are daily increasing in alarming degree, onerous to the courts, ruinous to the parties, and injurious to society; [4] It opens the door to frauds, which have already become extensive and serious.
S. Rept. No. 24-338, at 3 (1836). In the new law in 1836, Congress created the Patent Office and the post of Commissioner of Patents, and this was intended to “establish a check upon the granting of patents, allowing them to issue only for such inventions as are in fact new and entitled, by the merit of originality and utility, to be protected by law.” Id. at 4.
The system created by Congress relied heavily on the expertise of the Commissioner and his staff who were responsible for evaluating the merits of patent applications. See Act of July 4, 1836, ch. 357 at §§ 2, 7, 5 Stat. 117, 118-20. As the legislative history reveals, the purpose of the act was to bring specialized expertise to bear on questions of patentability:
The duty of examination and investigation necessary to a first decision at the Patent Office, is an important one, and will call for the exercise and application of much scientific acquirement and knowledge of the existing state of the arts in all their branches, not only our *1344 own, but in other countries. Such qualifications in the officers charged with the duty, will be the more necessary and desirable, because the information upon which a rejection is made at the office, will be available in the final decision. It becomes necessary, then, to give the Patent Office a new organization, and secure to it a character altogether above a mere clerkship. The competency and efficiency of its officers should correspond with their responsibility, and with the nature and importance of the duties required of them.
S.Rep. No. 24-338, at 4 (emphases added). An applicant dissatisfied with the Commissioner’s decision could appeal to a “board of examiners” appointed by the Secretary of State. In creating the Board, Congress also drew on the expertise of those skilled in the art. At least one board member was “to be selected, if practicable and convenient, for his knowledge and skill in the particular art, manufacture, or branch of science to which the alleged invention appertains.” Act of July 4, 1836, ch. 357 at § 7, 5, Stat. 117, 119-20. The de novo standard in today’s decision will allow applicants to bypass the PTO expertise that Congress viewed as critical to effective patent examination.[2]
II
Today’s decision not only departs from the Congressional design for the examination of patents. It also departs from set-tied principles of administrative law applicable to expert agency review generally and to the PTO in particular. The Supreme Court has emphasized that in general the PTO should be treated like other administrative agencies; that patent cases are subject to the same general administrative law principles under the APA; and that departure from those principles requires clear statutory language — language that is absent here. See Zurko, 527 U.S. at 161-65, 119 S.Ct. 1816; In re Comislcey, 554 F.3d 967, 974 (Fed.Cir.2009).
Except in very rare circumstances, judicial review of administrative action is based on the agency record. See, e.g., Camp v. Pitts, 411 U.S. 138, 141-42, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); Overton Park, 401 U.S. at 414-20, 91 S.Ct. 814; Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1381 (Fed.Cir.2009) (“The focus of judicial review of agency action remains the administrative record, which should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the APA.”); 33 Wright & Koch, Federal Practice and Procedure: Judicial Review of Administrative Action § 8306 (2006) (“[Ejxcept in the rare case, review in a federal court must be based on the record before the agency and, hence, a reviewing court may not go outside the administrative record.”).
As the Supreme Court stated in Overton Park, the circumstances under which de *1345 novo review of factual issues is appropriate are “narrow” indeed. 401 U.S. at 414, 91 S.Ct. 814. One example of such an exception is when “the agency fact-finding procedures are inadequate.”[3] Id. at 415, 91 S.Ct. 814. This same standard could apply to PTO review. As noted earlier, the PTO in examination proceedings generally can receive affidavit evidence but cannot receive live testimony. The PTO agrees that in such circumstances live testimony in district court may be appropriate. Appel-lee’s Brief at 9 (noting an applicant can introduce new evidence that “the applicant could not reasonably have provided to the agency in the first instance”). For example, in a narrow class of cases under section 145, the outcome will hinge on credibility determinations, such as where there is a question about the date of reduction to practice. In such circumstances, PTO procedures may be inadequate and it makes sense to permit the district court to take live testimony under Overton Park to resolve credibility issues. Where credibility issues are not presented, however, there is nothing inadequate about the PTO fact-finding process, and under general administrative law principles, the district court should be confined to the record presented to the PTO where the applicant could have presented the evidence in the first instance.[4]
The necessity of presenting evidence to the administrative agency in the first instance when the agency can receive the evidence is supported as well by principles of administrative exhaustion, which require that evidence and arguments both be presented in the first instance to the agency. The ordinary rule is that “no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.” McKart v. United States, 395 U.S. 185, 194, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (internal quotation omitted); see Woodford v. Ngo, 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). “Exhaustion concerns apply with particular force when the action under review involves exercise of the agency’s discretionary power or when the agency proceedings in question allow the agency to apply its special expertise.” McCarthy v. Madigan, 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (citing McKart, 395 U.S. at 194, 89 S.Ct. 1657) (emphasis added). The majority ignores these impor *1346 tant principles of administrative law, adopting a rule that effectively allows a patentee to decline to present his evidence supporting patent issuance to the PTO in the first instance.
Ill
The majority’s approach also finds no support in the language of the statute. Section 145 provides:
An applicant dissatisfied with the decision of the Board of Patent Appeals and Interferences in an appeal under section 134(a) of this title may, unless appeal has been taken to the United States Court of Appeals for the Federal Circuit, have remedy by civil action against the Director in the United States District Court for the District of Columbia if commenced within such time after such decision, not less than sixty days, as the Director appoints. The court may adjudge that such applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Board of Patent Appeals and Interferences, as the facts in the case may appear and such adjudication shall authorize the Director to issue such patent on compliance with the requirements of law. All the expenses of the proceedings shall be paid by the applicant.
35 U.S.C. § 145 (emphasis added).[5]
Contrary to the majority, the language of section 145 providing for district court review does not in any way suggest that the proceedings should be de novo rather than generally on the agency record. Even before the 1946 enactment of the APA, see Act of June 11, 1946, ch. 324, 60 Stat. 237, the Supreme Court had held that provisions for district court or trial court review of agency action would not be read to imply the power to go outside the agency record. For example, in Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524 (1930), the Court held that although the Packers and Stockyards Act of 1921, 7 U.S.C. §§ 181— 229, provided for suits to be brought in federal district court to enjoin the enforcement of agency orders, this did not imply a trial de novo. 280 U.S. at 444-45, 50 S.Ct. 220. The Court explained:
A proceeding under section 316 of the Packers and Stockyards Act is a judicial review, not a trial de novo. The validity of an order of the Secretary, like that of an order of the Interstate Commerce Commission, must be determined upon the record of the proceedings before him .... On all other issues his findings must be accepted by the court as conclusive, if the evidence before him was legally sufficient to sustain them and there was no irregularity in the proceeding. To allow his findings to be attacked or supported in court by new evidence would substitute the court for the administrative tribunal as the rate- *1347 making body. Where it is believed that the Secretary erred in his findings because important evidence was not brought to his attention, the appropriate remedy is to apply for a rehearing before him or to institute new proceedings.
Id. at 443^45, 50 S.Ct. 220 (emphases added; footnote omitted; citations omitted).
The Court disposed of similar arguments in the context of district court actions authorized by the judicial review provision of the Communications Act of 1934, 47 U.S.C. § 402(a). See Nat’l Broad. Co. v. United States, 319 U.S. 190, 227, 63 5.Ct. 997, 87 L.Ed. 1344 (1943). The statute initially provided for “suits in equity” to “enjoin, set aside, annul, or suspend any order or requirement of the Commission ....”[6] Communications Act of 1934, ch. 652, Title IV, § 402(a), 48 Stat. 1064, 1093. The Court held that such suits were not de novo, and the review was limited to the agency record: “The court below correctly held that its inquiry was limited to review of the evidence before the Commission. Trial de novo of the matters heard by the Commission and dealt with in its Report would have been improper.” Id. at 227, 63 S.Ct. 997 (emphasis added).
After enactment of the APA in 1946, the Supreme Court and other courts of appeals have repeatedly held that broad, general language such as “bill in equity” or “civil action” providing for trial court review does not create trial de novo, and that much more specific language is required. For example, in United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963), the Court held that “suit[sj” brought in the Court of Claims under the Wunderlich Act, Pub.L. No. 83-356, 68 Stat. 81 (1954),[7] were not trials de novo. 373 U.S. at 713-15, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963). The Court noted that “the standards of review adopted in the Wunderlich Act — ‘arbitrary,’ ‘capricious,’ and ‘not supported by substantial evidence’ — have frequently been used by Congress and have consistently been associated with a review limited to the administrative record.” Id. at 715, 83 S.Ct. 1409. The Court gave the following general rule:
[T]he reviewing function is one ordinarily limited to consideration of the decision of the agency or court below and of the evidence on which it was based. Indeed, in cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, this Court has held that consideration is to be confined to the administrative record and that no de novo proceeding may be held.
Id. at 715, 83 S.Ct. 1409 (emphases added). Similarly, in Andersen v. Distinct of Columbia, 877 F.2d 1018 (D.C.Cir.1989), the District of Columbia Circuit held that under the Individuals with Disabilities Education Act, which explicitly provides for a *1348 “civil action” in which the district court can hear “additional evidence at the request of a party,” 20 U.S.C. § 1415(i)(2), “[t]he authority of the district court to receive new evidence does not transform the review proceedings into a trial de novo,” 877 F.2d at 1025.
There is only one feature that distinguishes actions under section 145 from agency review in other contexts. Congress has provided for a dual avenue of review — review in this court under section 141 based on the agency record and review under section 145. This suggests that the two types of review proceedings are different, and that evidence that could not be submitted to the PTO may be received in section 145 actions. But it does nothing to suggest that district court review may proceed on an entirely new record or hold de novo proceedings, or that Congress intended to do anything more than permit evidence to be presented in district court that could not be presented before the Patent Office.
The APA contemplates that statutes providing for de novo proceedings will specifically use that language. Under 5 U.S.C. § 706(2)(F), a reviewing court may “set aside agency action, findings, and conclusions” if “unwarranted by the facts[,] to the extent that the facts are subject to trial de novo by the reviewing court.” Other federal statutes that have been held to provide for de novo review provide for such review explicitly. See, e.g., Food Stamp Act, 7 U.S.C. § 2023(a)(15) (“The suit in the United States district court or State court shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue.... ”).[8] This distinction has been repeatedly recognized. For example, in Ibrahim v. U.S., 834 F.2d 52 (2d Cir.1987), the court held that,
[t]he Food Stamp Act’s de novo review provision embodies a different and broader scope of review than that available under the APA ... [Cases requiring review on the agency record are different because there,] no statute or regulation provided for de novo review. The APA therefore governed. Here, in contrast, the Food Stamp Act specifically provides that review of FNS determinations ‘shall be a trial de novo.’ 7 U.S.C. § 2023(a).[9]
Id. at 53-54.
As these statutes demonstrate, when Congress intends review by de novo trial, Congress explicitly authorizes de novo trial. In the absence of specific statutory authorization, “de novo review is generally not to be presumed.” Consolo v. Fed. Mar. Comm’n, 383 U.S. 607, 619 n. 17, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). Section 145 does not include language providing for “de novo” review or the equivalent.
The majority is unable to point to any Supreme Court authority that has construed a statute not providing explicitly for de novo review or the equivalent as providing for such review. To be sure, the majority claims that Chandler v. Roudebush, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), recognizes de novo review based solely on the provision for a district court *1349 “civil action.” See Maj. op. at 1335 (“Where the statute permits a ‘civil action’ in relation to agency actions, the Supreme Court has held that this amounts to a trial de novo.”). That is not accurate.
The Chandler Court found that the plain language (and legislative history) of that particular statute did provide for de novo review. Chandler, 425 U.S. at 844-46, 96 S.Ct. 1949. The Civil Rights Act of 1964 provided for “civil aetion[s]” in district courts to redress discrimination against government employees. Id. at 844, 96 S.Ct. 1949. Significantly, the statute also provided that “the provisions of section 706(f) through (k) as applicable shall govern civil actions brought hereunder.” Id. at 844, 96 S.Ct. 1949 (quoting 42 U.S.C. § 2000e-16(d) (1970 ed., Supp. IV)). Those sections, dealing with civil actions involving private employees, had repeatedly been interpreted as providing for a trial de novo based on specific language in the private employee provision. Id. at 844-45, 96 S.Ct. 1949. The Court held that the incorporation of the private employee standard for a de novo trial meant that there was to be a trial de novo in government employee cases by virtue of the plain language of the statute. Id. at 845-46, 96 S.Ct. 1949. The Court reasoned that the “terminology employed by Congress” in providing for a “civil action” in section 706, relating to private sector employees, “indicates clearly that the ‘civil action’ to which private-sector employees are entitled ... is to be a trial de novo.” Id. “Since federal-sector employees are entitled by § 717(c) to ‘file a civil action as provided in section 706 [for private-sector employees]’ ... [and] the civil action provided in § 706 is a trial de novo, it would seem to follow syllogistically that federal employees are entitled to a trial de novo.... ” Id. Thus, based on that plain language of the statute and its legislative history, .it found the general presumption against de novo review inapplicable because “here ... there is a ‘specific statutory authorization’ of a district court ‘civil action,’ which both the plain language of the statute and the legislative history reveal to be a trial de novo.” Id. at 862, 96 S.Ct. 1949. There is no support for reading “civil action” language, standing alone, as requiring a trial de novo. The Supreme Court’s decision in Chandler supports that well-established rule.
IV
Additionally, the legislative history of the predecessor of section 145, when enacted in 1927, provides no support for the majority’s interpretation of the statutory text. The majority relies wholly on hearing testimony. As the Supreme Court stated in Kelly v. Robinson, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), the Court has declined “to accord any significance to ... statements” made in hearings. 479 U.S. at 51 n. 13, 107 S.Ct. 353. Earlier, in McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 51 S.Ct. 510, 75 L.Ed. 1183 (1931), the Court noted, “such individual expressions [as statements made in committee hearings] are with out weight in the interpretation of a statute.” Id. at 493-94, 51 S.Ct. 510. The majority’s decision here flies in the teeth of this established principle.
Even if the statements in Committee hearings could be considered relevant legislative history, the materials cited by the majority would be entitled to little weight. The 1927 legislation was based initially on a proposal drafted by the American Bar Association. To Amend Section 52 of the Judicial Code and Other Statutes Affecting Procedure in the Patent Office: Hearings on H.R. 6252 and H.R. 7087 Before the H. Comm. On Patents, 69th Cong. 14 (February 1926) [hereinafter To Amend Section 52 ]. The purpose of the proposal was to simplify the appeals procedure both *1350 within the Patent Office and in the courts. Id. at 3. Under section 4915 (section 145’s predecessor) as it then existed, an appeal could be taken from the Patent Office decision to the Supreme Court of the District of Columbia. Act of March 2, 1927, ch. 273, § 11, 44 Stat. 1335, 1336-37. Thereafter a “bill in equity” proceeding could be brought to set aside the Patent Office decision in district court. Id. The bills initially proposed to eliminate the appeal to the Supreme Court of the District of Columbia and to rely entirely on the bill in equity as the form of judicial review. To Amend Section 52, at 9.
Hearings were initially held in February of 1926 in the 69th Congress, First Session, on two separate bills. Id. at 1-2; see To Amend the Statutes of the United States as to Procedure in the Patent Office: Hearings on H.R. 7563 and H.R. 131.87, 69th Cong. 5 (Dec. 1926) (explaining the prior hearings) [hereinafter Procedure in the Patent Office], The quotes from the majority are taken entirely from the February 1926 hearings on bills that were not enacted into law insofar as they concerned revisions to section 4915.[10] The Commissioner of Patents objected to various provisions of the bill, and new bills were drafted reflecting substantial changes, including the creation of two alternative avenues for review — an appeal to the Court of Appeals for the District of Columbia based on the Patent Office record and the “bill in equity” procedure that would receive the full Patent Office record but allow supplementation.[11] Those February 1926 hearings were unlikely to be considered by members of Congress voting on a new and quite different bill in the subsequent session.
New hearings were held in December 1926 on the bill that ultimately became law (S. 4812 and H.R. 13487). In those hearings, both proponents of section 4915 (from the bar) and opponents (from the Patent Office) described the motivation for the new legislation in identical terms. While the bill in equity was characterized by some as a “de novo” proceeding or as “starting all over,”[12] those statements did not suggest that the Patent Office could be bypassed in the presentation of evidence. Indeed, the proponents viewed section 145 proceedings as involving review of PTO decisions. A.C. Paul, the Chairman of the legislation committee of the patent section of the American Bar Association viewed it as “practically another appeal.” See, e.g., Procedure in the Patent Office, at 8. Three features are significant. First, the statute, unlike the existing provision, allowed the Patent Office record to be received in section 4915 interference proceedings, and the hearings noted the benefits of using the *1351 Patent Office record in the bill of equity proceeding. For instance, Otto Barnett explained that the bill “for the first time ... provided that in [the bill of equity proceeding] you may use the testimony taken in the Patent Office” and that the new law was preferable because “under the present law it is all lost, and you have to start a new record.” Senate Hearings, at 13 (Statement of Otto R. Barnett).
Second, even more significantly, the purpose of the bill was described as permitting the presentation of live testimony in the bill in equity proceeding because it could not be submitted before the Patent Office.[13] For example, Edward S. Rogers explained,
There was a faction ... who were in favor of doing away with section 4915 [the predecessor of section 145].... It was thought inadvisable to do so, because the court, in hearing cases, will see the witnesses. The testimony in the Patent Office hearings is all taken by deposition, and you cannot take the bearing of a man in a deposition, and frequently there are clashes in the testimony and lapses of memory, if not actual perjury. So it seems quite necessary to have the men who are to testify put on the stand in court.
Senate Hearings, at 15 (statement of Edward S. Rogers) (emphasis added). Similarly, Commissioner of Patents Robertson noted,
My own preference would be to repeal entirely section 4915 ... but the bar unquestionably wants that section 4915 to continue, because it does permit bringing the witnesses in open court which we can not have under the present procedure in the Patent Office and so we have all agreed....
Procedure in the Patent Office, at 11 (statement of Thomas E. Robertson, Comm’r of Patents) (emphasis added).[14] The purpose of the new legislation would be entirely served by allowing in the trial court only evidence that could not have been submitted to the Patent Office, such as live testimony.
Third, there was no suggestion in the December 1926 hearings, as there was in the February 1926 hearing, that applicants in the bill in equity could “bring[ ] in evidence that they could have brought in before [the Patent Office] but did not.” To Amend Section 52, at 81 (statement of Thomas E. Robertson, Comm’r of Patents). That latter statement was made by the Commissioner of Patents only in February 1926 in his opposition to the bill. The omission of such statements in later hearings could well be explained by the Commissioner’s receiving assurances in negotiations over the bill that it did not go that far. In any event, the earlier statement cannot be afforded any weight. As the Supreme Court noted in Bryan v. United States, 524 U.S. 184, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998), “the fears and doubts of the opposition are no authoritative guide to the construction of legisla *1352 tion. In their zeal to defeat a bill, they understandably tend to overstate its reach.” 524 U.S. at 196, 118 S.Ct. 1939 (citations, brackets, and quotation marks omitted).
Far more pertinent than the committee hearings in connection with the 1927 Act is the history of the 1952 codification. As I discuss below, at the time of the 1952 codification the courts had uniformly rejected a de novo standard in interpreting section 4915. It is fair to assume that Congress approved that interpretation in codifying the section. Congress explicitly stated that codification of section 145 made “no fundamental change in the various appeals and other review of Patent Office action-” S.Rep. No. 82-1979 (1952), reprinted in 1952 U.S.C.C.A.N. 2394, 2400. The Supreme Court has recognized that the “evaluation of congressional action ... must take into account its contemporary legal context,” Cannon v. Univ. of Chi., 441 U.S. 677, 698-99, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), and that “Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change,” Lorillard v. Pons, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978).
V
The earlier Supreme Court cases relied on by the majority do not suggest a different construction. None of the cases cited by the majority held that any and all evidence could be admitted without regard to whether it was submitted to the Patent Office. Hoover Co. v. Coe, 325 U.S. 79, 65 S.Ct. 955, 89 L.Ed. 1488 (1945), merely states that section 145 allows for an action “on proof which may include evidence not presented in the Patent Office.” 325 U.S. at 83, 65 S.Ct. 955 (emphasis added). Similarly, Gandy v. Marble, 122 U.S. 432, 7 S.Ct. 1290, 30 L.Ed. 1223 (1887), merely noted that section 4915 was “not a technical appeal from the patent-office, nor confined to the case as made in the record of that office” and did not explicitly state there were no limits on the evidence introduced. 122 U.S. at 439, 7 S.Ct. 1290.
The majority, however, places emphasis on language in Butterworth v. Hoe, 112 U.S. 50, 5 S.Ct. 25, 28 L.Ed. 656 (1884), stating that in an action under section 4915 of the Revised Statutes (section 145’s predecessor):
Further provision, covering such and also all other cases in which an application for a patent has been refused, either by the commissioner of patents or by the supreme court of the district, is found in Revised Statutes, § 4915. It is thereby provided that the applicant may have remedy by bill in equity. This means a proceeding in a court of the United States having original equity jurisdiction under the patent laws, according to the ordinary course of equity practice and procedure. It is not a technical appeal from the patent-office, like that authorized in section f911, confined to the case as made in the record of that office, but is prepared and heard upon all competent evidence adduced, and upon the whole merits. Such has been the uniform and correct practice in the circuit courts. Whipple v. Miner, 15 Fed. Rep. 117; Ex parte Squire, 3 Ban. & A. 133; Butler v. Shaw, 21 Fed. Rep. 321.
Butterwortli, 112 U.S. at 61, 5 S.Ct. 25 (emphasis added).
In fact, Buttenvorth is no help to the majority for several reasons. First, But-tenvorth and the cases that it cited were all interference cases. Pre-1927 decisions of the Supreme Court and other courts in interference proceedings concerning the ability and necessity of creating a new record in bill in equity proceedings are of no value in interpreting the 1927 legisla *1353 tion. That legislation worked a major change on interference proceedings. The 1927 law explicitly provided that, for the first time, the PTO record would be received in the bill in equity interference proceedings and that “when admitted shall have the same force and effect as if originally taken and produced in the suit.” Act of March 2, 1927, ch. 273, § 11, 44 Stat. 1335, 1337 (1927). Previously in the bill in equity proceedings, the Patent Office record, because of the informal procedures followed in the Patent Office, was viewed as having secondary value, and it was necessary to create a new duplicate record in the trial court.[15] This was recognized both in the hearings on the 1927 legislation (as noted above) and in subsequent court cases. As the Third Circuit explained,
[T]he evidence given in the interference proceedings could be introduced only as secondary evidence, after proper foundation laid. The competency of such evidence had to be determined according to the principles of equity jurisprudence. In other words, the witnesses who had testified in the interference proceedings had to testify anew in the suit in the district court. If they did not so testify their absence had to be accounted for in the usual way if the testimony taken in the interference was to be received as secondary evidence. The [1927] amendment was passed to avoid this arduous and expensive means of reproducing the evidence of the interference proceedings in the suit.
Gen. Talking Pictures Corp. v. Am. TriErgon Corp., 96 F.2d 800, 812 (3d Cir.1938) (citations omitted). Under these circumstances, pre-1927 court cases naturally referred to the creation of a new record in the bill in equity proceedings. Under the 1927 legislation the creation of a new record in interferences became unnecessary. The legislation provided that the Patent Office record would be received and left it to the trial court to determine what additional cross examination and new testimony could appropriately be received.[16]
Second, Butterworth did not address the question whether evidence was required to be submitted to the Patent Office in the first instance if it was later to be used in bill in equity proceedings. The sole issue decided in Butterworih was whether the Secretary of the Interior could override the Patent Office decision approved by the court in a proceeding under section 4915. 112 U.S. at 54, 62, 68-69, 5 S.Ct. 25. The language of Butterworth is at best ambiguous. Like the other Supreme Court cases, it recognizes that new evidence may be *1354 received and considered in the trial court proceedings, id. at 61, 5 S.Ct. 25, but it says nothing about whether that evidence had to be submitted to the Patent Office in the first instance if such a submission were possible.
The three cases cited in Butterworth are no more illuminating. Whipple simply held that the trial court proceeding was an “original proceeding” and that the trial court could generally not enjoin issuance of a patent pending its outcome. 15 F. at 117-18. Butler held that for interference cases the 4915 proceeding could be invoked without first appealing to the Supreme Court of the District of Columbia, and noted that “the court may receive new evidence and has the same powers as in other cases in equity.” 21 F. at 326-27. Again, what new evidence could be heard remained unclear. In the third case the court rejected the contention that the court was confined entirely to the record before the Patent Office, holding that in addition to the Patent Office records “new and additional testimony” could be received in the equity proceedings. In re Squire, 22 F. Cas. at 1016. But again, the court was considering only a proposed blanket bar on new evidence; it did not consider whether the substance of testimony could be withheld from the Patent Office in the agency proceeding if the Patent Office could receive and consider it.[17]
Third, Butterworth’s reference to “the ordinary course of equity practice and procedure” and “competent evidence” suggests meaningful limits on the admissibility of new evidence in section 4915 proceedings. See 112 U.S. at 61, 5 S.Ct. 25. As the Supreme Court explained in Morgan v. Daniels, a bill in equity[18] in the context of section 4915 was
an application to the court to set aside the action of one of the executive departments of the government. The one charged with the administration of the patent system had finished its investigations and made its determination with respect to the question of priority of invention. That determination gave to the defendant the exclusive rights of a patentee. A new proceeding is instituted in the courts — a proceeding to set aside the conclusions reached by the administrative department, and to give to the plaintiff the rights there awarded to the defendant. It is something in the nature of a suit to set aside a judgment, and, as such, is not to be sustained by a mere preponderance of evidence.
153 U.S. 120, 124, 14 S.Ct. 772, 38 L.Ed. 657 (1894) (emphases added); see also Fregeau v. Mossinghoff, 776 F.2d 1034, 1037 (Fed.Cir.1985) (applying Morgan to section 145 and noting that “an action under § 145 is ... in essence a suit to set aside the final decision of the board, like the bill *1355 in equity from which it was derived”). Under settled principles of federal equity practice, a court presented with a bill to set aside a prior judgment would not rehear arguments or evidence that had been adjudicated in the prior proceeding, nor would it consider evidence that could have been produced during that proceeding in the exercise of reasonable diligence. Rather, the court would limit its review to (1) legal errors apparent on the face of the decree and (2) new evidence of such compelling character as to call into doubt the outcome of the prior proceeding. See, e.g., Beard v. Burts, 95 U.S. 434, 436, 24 L.Ed. 485 (1877); Scotten v. Littlefield, 235 U.S. 407, 411, 35 S.Ct. 125, 59 L.Ed. 289 (1914). In Beard, the Court explained:
To sustain a bill of review, there must be errors of law apparent on the face of the decree, or some new matters of fact material in themselves, and discovered after the rendition of the decree. This is the general rule in equity.... The facts are not open for a re-trial, unless the bill asserts that new evidence has been discovered, not obtainable before the first trial by the exercise of reasonable diligence.
Beard, 95 U.S. at 436 (emphasis added).[19] Thus, federal courts in equity rejected attempts to litigate, through a bill of review, factual questions that could have been raised in the prior proceeding. See id. at 436; Purcell, 71 U.S. (4 Wall.) at 521 (rejecting petitioner’s bill in equity because the complainant “offers no new evidence, but what he might as well have produced before”). These basic principles of equity practice would have been familiar to Congress in 1836, when it first authorized a “remedy by bill in equity” for applicants aggrieved by the final determination of the Commissioner of Patents. See Act of July 4, 1836, ch. 357, § 17, 5 Stat. 117, 124. Thus, the ordinary rules of equity practice tolerated nothing like the de novo relitigation that the majority adopts.
Finally, and most significantly, none of the cases subsequent to Butterworth has interpreted it, or the cases that it cited, to require de novo review under the 1927 legislation. The Supreme Court has never directly addressed the de novo review issue. The only Supreme Court case to address the scope of section 145 after passage of the 1927 Act, Dickinson v. Zurko, 527 U.S. 150, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999), does not address the issue of the scope of section 145 with regard to new evidence. Zurko involved the question of what was the proper standard of review on direct appeal to the Federal Circuit under 35 U.S.C. § 141. Id. at 152— 53, 119 S.Ct. 1816. Although the Supreme Court noted that a section 145 claimant can “present to the court evidence that the applicant did not present to the PTO,” the Court said nothing about when or under what circumstances such evidence could be introduced. See id. at 164, 119 S.Ct. 1816. The decision in Zurko in fact undermines the majority’s holding both by recognizing the importance of applying traditional administrative law principles to the PTO and in recognizing that the “PTO is an expert body” that “can better deal with the technically complex subject matter” of patent *1356 applications than the federal courts. Id. at 160, 119 S.Ct. 1816. As will be seen in the next section, Butterworth has never been seen by other courts of appeals as barring limitations on new evidence that could have been presented to the Patent Office under the 1927 Act.
VI
The majority opinion is, in fact, contrary to decades of circuit authority under the 1927 legislation, after Buttenuorth, recognizing limits on the admissibility of new evidence in section 145 and section 146 proceedings. One of the more influential cases on the admissibility of evidence is Barrett Co. v. Koppers Co., 22 F.2d 395 (3d Cir.1927), decided several months after the passage of the 1927 legislation. There, during interference proceedings in the Patent Office, the Barrett Company instructed its employees not to answer questions about certain of its “commercial practices.” Id. at 396. The Barrett Company lost the interference, and then filed a bill in equity under Revised Statutes § 4915 and sought to introduce before the district court the exact testimony it had instructed its employees not to provide during the interference. Id. The Third Circuit found that the district court properly excluded this evidence, saying:
The law gave the plaintiffs a day in court on the issue of priority. That was the day the interference was heard and if they chose not to avail themselves of their full rights but to gamble on the decision by giving only a part, and the weaker part, of the evidence they had in hand, they did it at their own risk. After losing on such evidence in what otherwise would be a train of futile appeals in the patent tribunals and Court of Appeals of the District of Columbia they cannot come into a District Court and say, now for the first time we shall tell the true story of reduction to practice and demand a patent.
... When, as in this case, a party has refused to produce evidence for consideration by the Court of Appeals of the District of Columbia and then in the statutory action under section 4915, R.S., produces that very evidence to overcome the effect of that court’s decision, he comes very close to trifling with the courts’ processes. If in this case the Court of Appeals of the District of Columbia was wrong it was because the plaintiffs purposely kept it in the dark. If now this court were in effect to reverse the decision of that court on evidence brought to light for the first time, we should be assisting the plaintiffs to profit by their own technical wrong doing.
... Particularly are we anxious that no one should think that we hold that any evidence not before the Court of Appeals of the District of Columbia is inadmissible in an action under section 4915, R.S. Such a notion would destroy the action given by section 4915, R.S. and throw overboard the whole doctrine of Morgan v. Daniels. Specifically our decision is that the plaintiffs in this action under section 4915, R.S., are estopped to offer evidence which was wholly within their possession and control at the interference proceeding and which they withheld from that proceeding and, therefore, withheld from the other patent tribunals and the Court of Appeals of the District of Columbia, and thereby made it impossible for those tribunals and that court to render what they, the plaintiffs, now maintain is the right decision.
Id. at 397 (formatting altered; emphasis added).
Subsequent to Barrett, three circuits— the District of Columbia, the Seventh, and the Eighth — have essentially followed the Barrett rule. The District of Columbia *1357 Circuit in Cal. Research Corp. v. Ladd, 356 F.2d 813 (D.C.Cir.1966), adopted a negligence standard to limit the introduction of new evidence in a section 145 proceeding and explained that a section 145 action “may not be conducted in disregard of the general policy of encouraging full disclosure to administrative tribunals.” Id. at 821. The Seventh Circuit adopted a “reasonably diligent” standard for determining whether evidence is admissible in a section 146 interference proceeding. In Velsicol Chem. Corp. v. Monsanto Co., 579 F.2d 1038 (7th Cir.1978), it held “that absent special circumstances, the proper question for the district court was whether the failure of the proponent of the additional evidence to uncover its existence earlier or to procure it for the interference proceeding occurred in spite of the proponent’s diligence in preparing his case before the Board.” Id. at 1046. The court cited the “policy of encouraging full disclosure” to the administrative tribunal as the reason for this limitation. Id.; see also Globe-Union v. Chi Tel. Supply Co., 103 F.2d 722, 728 (7th Cir.1939) (“We do not dispute the soundness of the proposition that all pertinent evidence, actually available, should be submitted in the first instance. To permit partial presentation before the Patent Office is to sanction the destruction of administrative justice.” (emphasis added)).
The Eighth Circuit adopted the rule that “deliberate, intentional, or willful withholding or suppression of pertinent and available evidence from the Patent Office, whether attended by reprehensible mo-fives or not, whether it be for tactical or other reasons, justifies exclusion of such evidence in a section 146 proceeding.” Kirschke v. Lamar, 426 F.2d 870, 874 (8th Cir.1970). The court reasoned that a section 146 proceeding was not a “full trial de novo; rather, allowance of evidence in addition to the Patent Office record must be tempered and circumscribed to some degree to effectuate the policy favoring full disclosure to administrative tribunals.” Id.
Although subsequent to Bar>~ett the Third and Second Circuits limited the exclusion to testimony intentionally suppressed, their holdings too are inconsistent with the majority’s approach here. The Third Circuit continued to hold that intentionally suppressed evidence must be excluded.[20] The Second Circuit, which originally approved of Barrett, see Greene v. Beidler, 58 F.2d 207, 208-09 (2d Cir.1932), later suggested an exclusion might be limited to evidence “suppressed,” not “merely neglected through the plaintiffs slackness in preparation,” Dowling v. Jones, 67 F.2d 537, 538 (2d Cir.1933).
Not a single court of appeals case has interpreted section 145 as permitting the submission of any and all new evidence. Although the cases suggest varying standards for the admission of new evidence, they all acknowledge the necessity of establishing significant limitations on the admission of new evidence, and recognize that to provide otherwise would undermine the requirement of administrative exhaustion. Today’s decision represents an ano *1358 malous and unjustified departure from prevailing circuit authority.
VII
The majority suggests that one should not be too concerned about its special rule for patent cases because general evidentia-ry principles will somehow allow the district court to discount evidence not submitted to the PTO and thus reach the same result at least in some cases. See Maj. op. at 1335-36. This approach is remarkably similar to the argument rejected in Zurko where it was suggested that there was no meaningful difference between the APA substantial evidence standard and the clearly erroneous standard for review of PTO decisions. The Supreme Court concluded that while the differences were “subtle” and might not affect many cases, the differences were nonetheless important. Zurko, 527 U.S. at 161-65, 119 S.Ct. 1816. Even if here the majority were right as to the consequences, this would not support application of the wrong law, as Zurko makes clear.
But the majority is not right as to the consequences, and there is nothing subtle about the difference between excluding evidence and admitting it. The evidentiary cases cited by the majority offer no support for discounting evidence not submitted to the PTO on grounds that it would be too costly to do so, and the majority offers applicants a ready made excuse — the costs of making a full record before the PTO— for the withholding of evidence under such circumstances.[21] The rules of evidence do not remotely offer a different path to the same result.
In conclusion, I note the quite arresting policy argument made by the majority for permitting applicants to bypass the PTO— that the applicant would bypass the PTO in favor of a de novo district court proceeding only in cases where the patent is commercially significant and the costs of a separate proceeding can be justified. See Maj. op. at 1335-36. But those are exactly the cases in which PTO review is most important. In such cases, contrary to the majority, it is not somehow fantastic to imagine that applicants will elect to bypass the PTO in favor of a second bite at the apple in the district court. They will do so exactly in those circumstances where an expert agency would reject the evidence but a non-expert district court might be convinced to accept it. A more pernicious approach is difficult to imagine.

. The PTO rules also provide that affidavits may be submitted after final rejection "upon a showing of good and sufficient reasons why the affidavit or other evidence is necessary and was not earlier presented.” 37 C.F.R. § 1.116(e).

. Allowing the applicant to bypass PTO expertise is particularly problematic where, as here, the applicant submitted multiple applications over a long period with multiple claims and multiple rejections. The '702 application at issue in this case is one of at least 39 identical applications filed by Hyatt in 1995. Appellee’s Brief at 3. Indeed, Hyatt appears to have a long history before the Board as well as this court. See, e.g., Hyatt v. Dudas, 492 F.3d 1365, 1371 (Fed.Cir.2007) (rejecting Hyatt’s claim that the examiner failed to establish a prima facie case for a lack of written description); In re Hyatt, 211 F.3d 1367, 1371 (Fed.Cir.2000) (rejecting Hyatt’s claim that the Board failed to analyze the claims on an element-by-element and claim-by-claim basis and affirming the Board’s anticipation determination); In re Hyatt, No. 87-1597, 1988 WL 57813. at *2 (Fed.Cir.1988) (holding that the examiner raised substantial questions concerning enablement, shifting the burden to applicant, who failed to offer any competent evidence to overcome the examiner’s prima facie case).

. Another exception enumerated in Overton Park is not applicable here. De novo review is also authorized "when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action.” 401 U.S. at 415, 91 S.Ct. 814. This exception does not apply to section 145 cases because new issues cannot be raised in a section 145 action. See Newman v. Quigg, 877 F.2d 1575, 1579 (Fed.Cir.1989) (citing DeSeversky v. Brenner, 424 F.2d 857, 858 (D.C.Cir.1970)).

. While the PTO states that "[w]e do not contend that an applicant’s ability to introduce new evidence is limited to situations in which ‘agency factfinding procedures are inadequate,’ ” Appellee’s Brief at 19 n. 4, there is little difference between the standard for the receipt of new evidence urged by the PTO and the standard I think is appropriate. The PTO agrees that new evidence that could not be submitted to the PTO may be introduced in district court. Id. at 29. In exceptional circumstances, the PTO apparently would allow other evidence in district court where there was a reasonable excuse for not submitting it to the PTO in the first instance and the evidence would be conclusive. See id. Those circumstances seem to be limited to situations where the evidence "in character and amount carries thorough conviction that the agency’s decision was mistaken.” Id. (internal quotation omitted). That describes situations where the failure to submit the evidence to the PTO would be harmless error. Where new evidence is discovered after the PTO proceeding and is presented to the district court, the district court in most instances should remand to the agency for its initial consideration.

. The comparable provision for interference proceedings, section 146, provides:
Any party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences on the interference, may have remedy by civil action, if commenced within such time after such decision, not less than sixty days, as the Director appoints or as provided in section 141 of this title, unless he has appealed to the United States Court of Appeals for the Federal Circuit, and such appeal is pending or has been decided. In such suits the record in the Patent and Trademark Office shall be admitted on motion of either party upon the terms and conditions as to costs, expenses, and the further cross-examination of the witnesses as the court imposes, without prejudice to the right of the parties to take further testimony. The testimony and exhibits of the record in the Patent and Trademark Office when admitted shall have the same effect as if originally taken and produced in the suit.
35 U.S.C. §1146 (emphasis added).

. This statute was later amended to transfer jurisdiction to three-judge panels of the district courts under the Urgent Deficiencies Act of 1913, 38 Stat. 208, 219. A proceeding to set aside an order of the Commission under that act was also considered “a plenary suit in equity.” Columbia Broad. Sys., Inc. v. United States, 316 U.S. 407, 415, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942).

. The statute provides:
No provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such official or his said representative or board is alleged: Provided, however, [tjhat any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.
41 U.S.C. § 321 (emphasis in original).

. See also 19 U.S.C. § 1592(e) (providing that, for review of customs penalties for negligence or fraud, "[njotwithstanding any other provision of law, in any proceeding commenced by the United States in the Court of International Trade, for the recovery of any monetary penalty claimed under this section ... all issues, including the amount of the penalty, shall be tried de novo ”).

. See United States v. Ford Motor Co., 463 F.3d 1286, 1298 (Fed.Cir.2006) (finding that even the explicit language of § 1592(e) should interpreted narrowly as providing for de novo review only of certain aspects of the customs determination, not to "permit an importer to end-run the protest provisions”).

. The only bill that was enacted (H.R. 6252) concerned amendments to the jurisdictional rules in Section 52 of the judicial code and allowed parties in a 4915 action, if they resided in different districts, all to bring suit in the Supreme Court of the District of Columbia. Act of March 3, 1927 ch. 364, 44 Stat. 1394.

. A.C. Paul, Chairman of the Legislation Committee of the Patent Section of the American Bar Association explained, "We had a hearing before the committee on February 4, 1926. At that time some provisions of the bill were objected to by the commissioner, and after a hearing, as chairman of the legislation committee of the patent section of the American Bar Association, I undertook to see if we could get together and reconcile the views of the commissioner and the members of the committee, and we had negotiations extending over a number of months.” Procedure in the Patent Office, at 5.

.Procedure in the Patent Office, at 11 (statement of Hon. Thomas E. Robertson, Comm’r of Patents); Amending the Statutes of the United States as to Procedure in the Patent Office: Hearings on S. 4812, 69th Cong. 10 (December 1926) (statement of Thomas E. Robertson, Comm’r of Patents) [hereinafter Senate Hearings].

. The prevailing situation had been described in the earlier hearing as follows: "[E]ach applicant [in interference proceedings] is allowed to put in as much testimony as he wishes, but they do not have the same cross-examination privileges that they have in open court.... In ex parte cases, there is no testimony except affidavits.” To Amend Section 52, at 37 (statements of Alexander J. Wedderburn, Patent Att'y & Karl Fenning, former Assistant Comm’r of Patents).

. Commissioner Robertson also stated that "[t]he judges who decide these cases have never seen the witnesses [but if you] want a trial de novo under section 4915 you can force your opponent to come under section 4915 so that the witnesses can be seen in court and have the testimony decided by the judges who actually see the witnesses as they testify.” Procedure in the Patent Office, at 14 (statement of Thomas E. Robertson, Comm’r of Patents) (emphasis added).

. To be sure, in some cases the case did proceed based on the PTO record. See, e.g., Morgan v. Daniels, 153 U.S. 120, 124, 14 S.Ct. 772, 38 L.Ed. 657 (1894).

. Although sections 145 and 146 stem from the same root, namely, R.S. § 4915, they are distinct because they have different content and contain different procedures for admitting evidence. In section 145 ex parte proceedings, the Patent Office is a direct party to the action whereas in section 146 interferences, the two private parties to the interference are the parties in interest. Section 146 explicitly addresses the optional procedure for admitting the entire administrative record, and such language is absent from section 145 because the administrative record is automatically admitted injudicial review proceedings. Thus, it is inaccurate to conflate sections 145 and 146 with regard to admissibility. Section 145 could be construed as a "mongrel” cause of action in the same sense that claim construction is “a mongrel practice,” as Justice Souter noted in Markman v. Westview Instruments, Inc., 517 U.S. 370, 378, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Once again, as in Zurko, the majority is attempting to develop a distinction between patent administrative law and the traditional administrative agency procedure. In doing so, it fails to focus on the core of the matter, namely the discretion of a district court regarding the admissibility of evidence in a section 145 case.

. The language quoted by the majority is not in fact from Squire itself but from the earlier case of Atkinson v. Boardman quoted in Squire as part of the background description. See Atkinson v. Boardman, 2 F. Cas. 97 (C.C.N.Y.1851).

. A "bill in equity,” also termed a "bill of complaint,” was the initial pleading that invoked the jurisdiction of the courts of equity. See Federal Equity Rule 25 (1913). Equity courts recognized various species of bills, depending on the nature of the relief sought. The "bill of review” was a type of bill in equity seeking a reversal or modification of a prior decree or judgment. See, e.g., Kingsbury v. Buckner, 134 U.S. 650, 671-72, 10 S.Ct. 638, 33 L.Ed. 1047 (1890); Thompson v. Maxwell, 95 U.S. 391, 395-96, 24 L.Ed. 481 (1877) ("It is manifest that the object of this bill, especially after being amended, was to set aside the decree made in the original cause, and to substitute therefor a new decree supposed to be more advantageous to the complainants, upon the same matters which were before the court and under its consideration in the said cause. Under the guise of a bill for quieting title it was in reality a bill of review.”).

. See also Scotten, 235 U.S. at 411, 35 S.Ct. 125 (explaining that a bill of review encompassed only manifest legal errors and "new facts discovered since the decree, which should materially affect the decree and probably induce a different result”); Purcell v. Miner, 71 U.S. (4 Wall.) 519, 521, 18 L.Ed. 459 (1866) ("By Lord Chancellor Bacon's rules, it was declared: ‘No bill of review shall be admitted except it contain either error in law appearing in the body of the decree without further examination of matters in fact, or some new matter which hath arisen in time after the decree; and not on any new proof which might have been used when the decree was made.’ ”); Whiting v. Bank of United States, 38 U.S. (13 Pet.) 6, 13-14, 10 L.Ed. 33 (1839).

. See Minn. Mining & Mfg. Co. v. Carborundum, 155 F.2d 746, 748 (3d Cir.1946) (distinguishing Banett and allowing expert testimony that was not intentionally suppressed at the time of the Patent Office proceedings). Although another later Third Circuit case, Standard Oil Co. v. Montedison, S.P.A., 664 F.2d 356, 376 (3d Cir.1981), stated that "new expert testimony is clearly admissible in a section 146 proceeding without [showing special circumstances explaining why the testimony was not presented first to the Board] to the extent that it aids the court in understanding issues presented to the Board,” the court was apparently responding to an attempt by the objecting party to place the burden of justifying the evidence on the party offering it.

. The majority suggests that two cases from the turn of the last century recognize that "courts have considered an applicant's failure to introduce evidence before the Patent Office in determining what weight to afford to the evidence.” Maj. op. at 1335. The limited holdings of these cases impose no meaningful limits. The first simply recognizes that a witness’ new explanation, not offered in his Patent Office declaration, was not credible. W. Elec. Co. v. Fowler, 177 F. 224, 228-29 (7th Cir.1910). The second recognizes that prior consistent declarations of a witness in the PTO proceeding, only introduced in district court after the witness had died, would be given little weight in evaluating the witness’ earlier testimony. Standard Cartridge Co. v. Peters Cartridge Co., 77 F. 630, 638 (6th Cir.1896). These cases impose no limit on new evidence presented by new witnesses whose declarations were not supplied to the PTO.